UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>              Plaintiff,<br><br>   v.<br><br>GUARD FOX,<br><br>              Defendant. | Case No. 1:16-cv-00143-EJL<br>(lead case)<br><br>**ORDER** |
| KENT WILLIAMS,<br><br>              Plaintiff,<br><br>   v.<br><br>GUARD BROOKS; GUARD<br>NETTLETON; GUARD HANSEN;<br>GUARD CULBERTSON; and<br>GUARD JENSEN,<br><br>              Defendants. | Case No. 1:16-cv-00478-EJL<br>(consolidated case) |

Plaintiff Kent Williams, a prisoner currently in the custody of the Idaho Department of Correction ("IDOC"), is proceeding pro se and in forma pauperis in this consolidated civil rights action. The events giving rise to Plaintiff's claims arose while he was incarcerated at the Ada County Jail.

**ORDER - 1**

Currently pending is Plaintiff's motion requesting "permission to resubmit Plaintiffs' first amended complaint," which the Court construes as a motion for leave to file a second amended complaint in Case No. 1:16-cv-00143-EJL (the lead case). (Dkt. 42.) He has also filed a proposed amendment, which the Court will identify as Plaintiff's Second Amended Complaint. (Dkt. 43.) Also pending are the following: (1) Defendant Fox's Motion to Stay (Dkt. 33); (2) Plaintiff's Request for Sanctions, Motion to Strike and Seal Discovery (Dkt. 46); (3) Plaintiff's Motion for Additional Interrogatories and Motion to Strike from the Record Discovery Submitted by Defendant (Dkt. 51); and (4) Plaintiff's objections to the Order of Reassignment and Consolidation, construed as motions to sever the lead and consolidated cases (Dkt. 54; and Dkt. 8 in the consolidated case.)

Additionally, in Case No. 1:16-cv-00478-EJL, the Court must engage in the initial screening process as required by the Prison Litigation Reform Act. *See* 28 U.S.C. §§ 1915 and 1915A.

## 1.     Standard of Law for Review of Prisoner Complaints

The Court is required to review complaints filed in forma pauperis, or complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint, or any portion thereof, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(d)(2) & 1915A(b).

ORDER - 2

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials generally are not liable for monetary damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's

**ORDER - 3**

wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207

(9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1)

"set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series

of acts by others, which [the supervisor] knew or reasonably should have known would

cause others to inflict a constitutional injury"; (3) fail[ed] to act or improperly acting in

"the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the

constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous

indifference to the rights of others." *Id*. at 1205-09. A plaintiff cannot simply restate these

standards of law in a complaint; instead, a plaintiff must provide specific facts supporting

the elements of such a claim, and he must allege facts showing a causal link between

each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of

misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend

a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). A

liberal amendment policy is especially important with respect to pro se litigants. Courts

must liberally construe civil rights actions filed by pro se litigants so as not to close the

courthouse doors to those truly in need of relief. *Eldridge v. Block*, 832 F.2d 1132, 1135,

1137 (9th Cir. 1995).

## 2.    Background

In Case No. 1:16-cv-00143 (the lead case), United States Magistrate Judge Candy

W. Dale reviewed Plaintiff's initial Complaint, pursuant to 28 U.S.C. §§ 1915 and

1915A, and allowed Plaintiff to proceed on his First Amendment claim alleging that Defendant Deputy Fox retaliated against Plaintiff for filing jail grievances containing disrespectful language; Fox allegedly threatened to injure Plaintiff if he continued to file such grievances. The Court did not allow Plaintiff to proceed on a freestanding free speech claim. (Dkt. 8.)

Plaintiff filed a motion to reconsider the Court's analysis of his free speech claim, as well as a motion for a preliminary injunction, and the case was reassigned to the undersigned judge. The Court denied both motions. (Dkt. 23.) Plaintiff then filed a request for an "Amended Temporary Restraining Order and/or Preliminary Injunction[] and Updated Information" and a "Request to Amend Complaint and Add an Additional Defendant" (Dkt. 24, 31), both of which the Court construed as seeking leave to amend the initial Complaint. Because it was evident from Plaintiff's filings that he did not intend for his proposed first amended complaint to supersede the initial Complaint—the amendment contained only new allegations and omitted any claims against Defendant Fox—the Court denied the motions to amend without prejudice. (Dkt. 37.) The Court gave Plaintiff 30 days to submit a new motion to amend and a proposed second amended complaint.

On October 28, 2016, Plaintiff filed a new civil rights action, asserting similar claims against Defendant Deputies Brooks, Nettleton, Hansen, Culbertson, and Jensen. *See* Case No. 1:16-cv-00478. That case was recently reassigned to the undersigned judge

**ORDER - 5**

and consolidated with Case No. 1:16-cv-00143, as the cases appear related and would benefit from coordinated processing. (Dkt. 53.)

Before the expiration of the 30-day amendment period in Case No. 1:16-cv-00143, Plaintiff filed a motion for an extension of time "to submit any matter with the Court which is currently under a time line or which may in the near future arrise [sic]." However, Plaintiff did not attach a certificate of service, nor did he specifically request an extension of time to file a second amended complaint. (Dkt. 38.) Plaintiff filed his latest motion to amend and a proposed second amended complaint on December 20, 2016. (Dkt. 42, 43.) Though the motion and amendment appear to be untimely, the Court will exercise its discretion to accept the filing of the motion to amend and the proposed second amended complaint.

The Court has reviewed the law regarding prisoner grievances and the First Amendment and will proceed to screen the pleadings in both the lead and consolidated cases. *See* 28 U.S.C. §§ 1915(e) and 1915A.

In the proposed second amended complaint in the lead case, No. 1:16-cv-00143-EJL, Plaintiff appears to allege that Defendant Fox refused to process Plaintiff's grievances regarding (1) Fox's action in throwing away Plaintiff's outgoing mail, and (2) Plaintiff's classification in administrative segregation. (Dkt. 43-1 at 3-4.) Plaintiff also claims that Defendant Fox threatened Plaintiff with disciplinary action in retaliation for Plaintiff's use of disrespectful language in grievances. (Dkt. 43 at 2, 5-6.) Although Plaintiff previously asserted, in his initial Complaint, that Fox threatened to injure

ORDER - 6

Plaintiff by stating, "[F]irst chance I get at your neck" (Dkt. 3 at 4), he has withdrawn

that allegations, as it is not contained in the proposed second amended complaint. (Dkt.

43; *see also* Dkt. 37 at 3 (informing Plaintiff that an amended pleading supersedes the

original pleading and that any claims contained in an initial complaint, but not in an

amended complaint, are deemed waived).)

    In the Complaint in the consolidated case, No. 1:16-cv-00478-EJL, Plaintiff

asserts that he was accused of and punished for using disrespectful language in two other

grievances, again while he was housed at the Ada County Jail:

- "The decision I am grieving is: not to allow me to review my medical file. Really? You people won't even let inmates to review their medical files? You guys got some mental issues. Time for a new sheriff: This one runs a sadistic camp."

- "You might want to train that mentally handicapped Deputy Brooks and the moron who wrote the inmate handbook. That doesn't trump the constitution."

(Dkt. 3, in No. 1:16-cv-00478-EJL, at 4-5.) Plaintiff's grievances were rejected. Plaintiff

was also charged with a disciplinary violation, found guilty of the violation, and punished

with a loss of privileges for five days. Plaintiffs asserts claims of violations of the rights

to free speech, to file grievances, and to be free from retaliation for exercising free speech

rights.

**3.    Discussion of Plaintiff's Claims in Both the Lead and Consolidated Cases**

    The standards governing First Amendment claims of incarcerated persons were

outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). The

legal standards applicable to First Amendment claims involving prison grievances have

**ORDER - 7**

been further sharpened and refined in *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995); *Shaw v. Murphy*, 532 U.S. 223 (2001); *Hargis v. Foster*, 312 F.3d 404 (9th Cir. 2002); and *Brodheim v. Cry*, 584 F.3d 1262 (2009).

Based upon these cases of precedent, various district courts have forged new ground in addressing claims based on disrespectful language in prison grievances. These decisions are not binding on this Court, but they are cases of interest for the Court to consider in its survey of the evolving law in this area. *See, e.g., Richey v. Dahne*, No. C12-5060, 2016 WL 7325218 (W.D. Wash. Dec. 15, 2016) ("In this case, [plaintiff] has met his burden to show a violation of his constitutional right. [Defendant] took the adverse action of ordering [plaintiff] to rewrite his grievance because of inappropriate language in the grievance."), *appeal filed* Jan. 13, 2017; *Calloway v. California Dep't of Corr. & Rehab.*, No. 116-cv-1305, 2017 WL 220310 (E.D. Cal. Jan. 18, 2017) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.") (internal citations omitted).

###    A.    *Free Speech*

The *context* of an inmate's exercise of free speech determines how much protection is afforded the speech. In *Turner v. Safley*, the United States Supreme Court examined the free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court

instructed the federal district courts to review four factors when a prison regulation or practice impinges on a First Amendment right of a prisoner: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-93 (internal quotation marks omitted).

When considering a prison rule or regulation under *Turner*, a court must review both (1) the facial validity of the regulation under the four *Turner* factors and (2) whether the regulation was unconstitutional as applied to the inmate by examining "whether applying the regulation to [the] speech . . . was rationally related to the legitimate penological interest asserted by the prison." *Hargis*, 312 F.3d at 410.

Verbal expressions of free speech in prison are treated differently from written expressions. In both *Bradley* and *Brodheim*, the Ninth Circuit drew an important distinction between (1) the act of *writing* disrespectful words in a grievance directed to prison officials, and (2) the legitimate interest a prison has in "prevent[ing] any *open expression of disrespect* or any disrespectful communication between prisoner and guard or between prisoner and prisoner." *Brodheim*, 584 F.3d at 1273 (emphasis added) (citing

*Bradley*, 64 F.3d at 1281); *see also Custodio v. Idaho State Bd. of Corr.*, No. 1:13-CV-00332-BLW, 2016 WL 5661984, at *5 (D. Idaho Sept. 29, 2016) (unpublished).

Further, written expressions in documents other than prison grievances appear to be treated differently than written expressions contained within grievances. *Compare Barrett v. Belleque*, 2011 WL 802707 (D. Or. 2011) (unpublished), *aff'd*, 475 F. Appx. 653 (9th Cir. 2012) (unpublished), *cert. denied*, 133 S. Ct. 318 (2012),[1] *with Richey*, 2016 WL 7325218 (unpublished).

---

[1]    On appeal in *Barrett*, the Ninth Circuit determined:

>      The district court properly granted summary judgment to the defendants on Barrett's claim for damages because the defendants are entitled to qualified immunity. *See Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982))).

>      *Procunier v. Martinez,* 416 U.S. 396, 415–16, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401, 109 S. Ct. 1874, 104 L.Ed.2d 459 (1989), established that prison officials cannot censor outgoing inmate mail merely because it contains exaggerated complaints; magnified grievances; expressions of inflammatory political, racial or religious views; unwelcome criticism of policies, rules or officials; or disrespectful comments. *Procunier,* however, did not address whether inmates can be disciplined for posting letters directing hostile and abusive language to and at prison staff, which the defendants here reasonably believed Barrett to have done. Rules prohibiting inmates from directing disrespectful comments toward staff indisputably further legitimate penological interests in security, order and rehabilitation. *See Bradley v. Hall,* 64 F.3d 1276, 1280 (9th Cir.1995), *abrogated on other grounds by Shaw v. Murphy,* 532 U.S. 223, 121 S. Ct. 1475, 149 L.Ed.2d 420 (2001).

>      *Procunier* also did not address whether an inmate can be disciplined for posting letters that endorse a white supremacist prison gang that prison officials have identified as a security threat group (STG). ODOC had identified Barrett as a member of the Aryan Soldiers, a white supremacist STG. The defendants could have reasonably believed that disciplining Barrett for posting letters expressing support and endorsement for his STG furthered an important penological interest in rehabilitation. The defendants are therefore entitled to qualified immunity.

**ORDER - 10**

Because the free speech analysis of language uttered by inmates necessarily depends on its context—written or unwritten, grievance or non-grievance—the Court concludes that Plaintiff does not have a freestanding free speech claim that is *separate* from its context. Therefore, Plaintiff may not proceed on such a claim, but, as explained below, he may proceed with his First Amendment claims within the context of (1) his right to petition the government for redress, and (2) his right to be free from retaliation.

### B. *Right to Petition for Redress*

Disrespectful language in an inmate's grievance is protected activity under the First Amendment's "right to meaningful access to the courts" and the "broader right to petition the government for a redress of his grievances." *Bradley*, 64 F.3d at 1281-82. "The government to which the First Amendment guarantees a right of redress of grievances includes the prison authorities, as it includes other administrative arms and units of government." *Id*. at 1279. In *Bradley*, the Ninth Circuit Court of Appeals held that accessing the courts was such an important right that prison officials should not be

---

Because we hold that the defendants did not violate a right that was clearly established at the time of their conduct, we do not address whether their conduct violated the First Amendment. *See Pearson,* 555 U.S. at 232, 236, 129 S. Ct. 808 (describing the two prongs of the qualified immunity analysis and holding that courts have discretion in deciding which of the two prongs should be addressed first).

475 F. App'x 653, 655-56 (9th Cir. 2012).

**ORDER - 11**

permitted to punish prisoners for using "hostile, sexual, abusive, or threatening" language in a written grievance. *Id*. at 1279, 1282.[2]

In *Shaw v. Murphy*, 532 U.S. 223 (2001), the United States Supreme Court disapproved of the Ninth Circuit's balancing test used to give more weight to the importance of a grievance than to the importance of the penological interest set forth by the prison in *Bradley*. The *Shaw* opinion clarified that "the *Turner* test, by its terms, simply does not accommodate valuations of content. On the contrary, the *Turner* factors concern only the relationship between the asserted penological interests and the prison regulation." *Id*. at 230.

*Shaw* instructed that a reviewing court's focus must be content neutral. Prison officials are to remain the primary arbiters of the problems that arise in prison management. If courts were permitted to enhance constitutional protection based on their assessments of the particular communications, courts would be in a position to assume a greater role in decisions affecting prison administration. *See Turner*, 482 U.S. at 89 ("Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.").

Notwithstanding the Supreme Court's emphasis on deference to prison officials as articulated in *Turner* and *Shaw*, it seems the Ninth Circuit has not yet found a legitimate

---

[2]     In a somewhat similar case, *Tarabochia v. Hill*, Case No. 03-35600, 140 F. App'x 753, 754 (9th Cir. Oct. 27, 2010) (unpublished), the Ninth Circuit opined that the right to be free from punishment for writing disrespectful language in a grievance is clearly established.

**ORDER - 12**

penological interest that satisfies the *Turner* test in disrespectful-grievance cases except that "prison officials may properly discipline inmates for criminal threats contained in written grievances." *Bradley*, 64 F.3d at 1281-82. Stated another way, inmates may be disciplined if language in a written grievance posed "a substantial threat to security and discipline" at the prison.[3] *Brodheim*, 584 F.3d at 273.

Based on the foregoing, Plaintiff may proceed on his claims that Defendants violated his First Amendment right to petition the government for redress.

### C.    *Access to Courts*

The Court concludes that the Complaint does not plausibly assert a separate claim for violation of the right to access the courts, which can be construed as a slightly different cause of action from the right to petition for redress. Plaintiff has not plausibly alleged that he was blocked from accessing the courts on the actual claims that were the subject of his grievances—e.g., the throwing away of his outgoing mail, his housing classification, and the refusal of jail authorities to let him review his medical records—as a result of Defendants' failure to accept and process his grievances. An access to courts claim asserting that a prisoner lost his right to bring the underlying claims because of the grievance rejection does not appear ripe without having a court dismiss such claims on the basis of failure to exhaust administrative remedies. Rather, here, the access to courts

---

[3]       *See, e.g., Helm v. Hughes*, 2011 WL 476461 (W.D. Wash. Jan. 6, 2011) (finding that language of "abuse is violence; violence begets violence" was a threat that met the *Turner* standard). *Cf. In re Parmelee*, 63 P.3d 800 (Wash. Ct. App. 2003) (rejecting *Bradley* as nonbinding precedent on a state court and finding it appropriate under *Turner* and the First Amendment for prison officials to punish inmate for writing threats in grievances: "Fire this asshole before someone reacts to his attempt to provoke violently, correct this door problem immediately," and, "Fire this asshole before someone reacts to his attem[pt] to provoke violently.")

claim is one and same as the right-to-petition claim, but for ease of reference, the Court will refer to it simply as a claim asserted pursuant to the First Amendment right to petition for redress.

The Court notes that the Eastern District of California courts have dismissed First Amendment disrespectful-grievance claims by merging a claim of the right to petition the government (in jail or prison) with the broader claim of access to courts (in court) that requires an actual injury.[4] *See, e.g, Calloway*, 2017 WL 220310, at *4; *Galzinksi v. Beard*, No. 1:14-cv-01158, 2014 WL 5781136, at *1 (E.D. Cal. Nov. 5, 2014). Such an analysis seems unnecessary in this case under the facts alleged in the pleadings. It appears that Plaintiff classifies his claim as one involving the right to petition for redress, rather than the right to access the courts.

## D.   *Retaliation*

Inmates have a right to be free from retaliation by prison officials for exercising a constitutional right, such as free speech or the right to petition for redress. *Jones v. Williams*, (9th Cir. 2015). A retaliation claim consists of five elements: "(1) An assertion

---

[4]    An inmate has a First and Fourteenth Amendment right to access the courts, *Bounds v. Smith*, 430 U.S. 817 (1977), and may recover for denial of that right in a civil rights lawsuit if he or she can demonstrate that an *actual injury* occurred as a result of the denial, *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). The right to access the courts is a limited one, aimed at ensuring that prisoners may initiate legitimate petitions challenging their criminal convictions and complaints alleging civil rights violations. *Id.* at 354. To allege an injury that affected the right to access the courts, a plaintiff must (1) adequately describe the claim that was hindered and (2) allege facts that show it was actually hindered. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "Hindered claims" can be "forward-looking" claims (those for which an impediment must be removed to permit the plaintiff to proceed with a still-viable claim) or "backward-looking" claims (those now impossible to file, such as a claim barred by a statute of limitations). *Id.* at 413-14.

**ORDER - 14**

that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

As to the first element, "the mere threat of harm can be an adverse action, regardless of whether it is carried out[.]" *Brodheim*, 584 F.3d at 1270 (internal quotation marks and citations omitted). In *Brodheim*, the Court of Appeals found that a written warning to the inmate to be careful about what he wrote in grievances created a material dispute of fact sufficient to go to a jury. *Id*. In *Richey v. Dahne*, a federal district court determined that a prison official's requirement that an inmate rewrite his disrespectful grievance was enough to constitute an adverse action. Disagreeing with the magistrate court's report and recommendation in that case, the district court in that matter concluded that it was clearly established law that requiring inmates to rewrite disrespectful grievances was an adverse action that violated the First Amendment. That decision is now on appeal, and the Court mentions it not as binding precedent, but as an opinion that has emanated from the Ninth Circuit's strict approach to protected language contained in jail or prison grievances. *See Richey v. Dahne,* 2016 WL 7325218 (W.D. Wash. Dec. 15, 2016), *appeal filed*, *Richey v. Dahne*, No. 17-35032 (9th Cir. Jan. 13, 2017).

With respect to the second element—causation—there must be evidence, either direct or circumstantial, to establish a link between the exercise of a constitutional right and the alleged retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806–07 (9th Cir. 1995).

**ORDER - 15**

The *Brodheim* court clarified that, if a plaintiff puts forth evidence that, taken in a light most favorable to him, established that the motivating factor for the punishment was either the "'disrespectful language' or the grievance as a whole," then the causation factor of a retaliation claim will be met for purposes of defeating a defendant's summary judgment motion. 584 F.3d at 1271.

Although "timing can be properly considered as circumstantial evidence of retaliatory intent," generally there must be something more than timing alone to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808. Retaliation is not established simply by showing adverse activity by defendant *after* protected speech; plaintiff must show a nexus between the two. *See Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").

As to the third element, it is clearly established that "[t]he First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Bradley*, 64 F.3d at 1279; *see also Rhodes*, 408 F.3d at 567 (observing that, "[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices"). Thus, although there is no *freestanding* constitutional right to access to a jail or grievance process, *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), if the jail or prison chooses to provide such a process, inmates have a constitutional right to use it.

**ORDER - 16**

Regarding the fourth element of a retaliation claim, the chilling-of-speech inquiry is evaluated using an objective standard. "[A] plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather than the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568-69).

As to the fifth element, a plaintiff must show that the challenged conduct "did not reasonably advance a legitimate correctional goal." *Id.* (internal quotation marks omitted). In making this determination, the court must consider the four factors set forth in *Turner v. Safley* (as listed above). *Id.* at 1272.

A claim of retaliation is not successful merely because the inmate was punished for using disrespectful language in a grievance; there must also be a showing of an actual retaliatory motive.[5] For example, in *Tarabochia v. Hill*, the district court adopted the

---

[5]     *See* the concurring opinion of Judge Bea in *Brodheim*:

> I agree with the majority opinion except for its treatment of the prison's legitimate penological interest. To my mind, the majority's holding that there is no legitimate penological interest in admonishing prisoners to be more respectful in future written grievances is unnecessary to the resolution of the case. If the majority opinion made the exact opposite holding, that there is such a legitimate penological interest, summary judgment would still be in error. This is because a rational trier of fact could find, based on Cry having warned Brodheim to "be careful what you write, request on this form," that Cry retaliated against Brodheim for either being disrespectful in the grievance, or for having filed the grievance itself. Because there is no legitimate penological interest in warning prisoners not to file grievances, a trial would still be necessary to resolve the issue of Cry's retaliatory motive even if the majority held there was no penological interest in admonishing prisoners to be more respectful. Therefore, because the district court erred by granting summary judgment to defendants no matter which way we decide this issue, it is unnecessary to decide it. However, I agree that the district court erred by granting summary judgment to the defendants, so I concur.

584 F.3d at 1274 (Bea, J., concurring).

**ORDER - 17**

magistrate court's reasoning in rejecting the plaintiff's retaliation claim where officers

thought they were acting within the law, even though ultimately they were not:

> An examination of the record reveals that defendants did not
> retaliate against plaintiff for his use of the grievance system,
> but punished him under the mistaken assumption that *Bradley*
> was no longer valid legal precedent. Aside from the
> disciplinary action taken the day after he filed his grievance,
> plaintiff fails to direct the court to any evidence tending to
> show that prison officials retaliated against him solely
> because he chose to utilize the grievance process. Given these
> facts, plaintiff has not met his burden of proof with respect to
> the retaliation claim.

*Tarabochia v. Hill*, No. 3:01-cv-00920, Dkt. 34, 37 (D. Or. May 13, 2002 & June 25,

2002) (available on PACER), *aff'd*, No. 03-35600, 140 F. Appx. 753 (9th Cir. Oct. 27,

2010) (unpublished).

Liberally construed, Plaintiff's allegations state plausible retaliation claims against

Defendants.

## CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that any of

Plaintiff's claims will be successful; it merely finds that some are colorable, meaning that

the claims will not be summarily dismissed at this stage. This Order is not intended to be

a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination

that some of Plaintiff's claims are plausible and should proceed to the next stage of

litigation.

**ORDER - 18**

Defendants may file a motion for dismissal on any basis other than failure to state a claim.[6] Because prisoner filings must be afforded a liberal construction, because prison officials often possess the evidence prisoners need to support their claims, and because many defenses are supported by incarceration records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting defenses such as qualified immunity. In such instances, the parties may be required to exchange limited information and documents directly relevant to the defense at issue.

## ORDER

### IT IS ORDERED:

1. Defendant Fox's Motion to Stay this case pending the outcome of Plaintiff's interlocutory appeal (Dkt. 33) is MOOT, as that appeal has been dismissed. (*See* Dkt. 50.)

2. Plaintiff's request for permission to resubmit his First Amended Complaint, construed as a motion for leave to file a Second Amended Complaint (Dkt. 42) is GRANTED. The Second Amended Complaint is found at Dkt. 43.

3. To maintain clarity in the record, the Clerk of Court shall add to the docket, in the lead case, the separate Complaint in the consolidated case (Dkt. 3 in No. 1:16-cv-00478-EJL), noting the date it was originally submitted to the Court.

---

[6]     The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A.

**ORDER - 19**

4.     Plaintiff may proceed on his retaliation and right-to-petition claims in both
(1) the Second Amended Complaint against Defendant Fox, in Case No.
1:16-cv-00143-EJL, and (2) the Complaint against Defendants Brooks,
Nettleton, Hansen, Culbertson, and Jensen, in Case No. 1:16-cv-00478-
EJL.

5.     Within **10 days** after entry of this Order, counsel for Defendant Fox shall
inform the Court whether counsel in the lead case will also be representing,
and whether counsel will waive service on behalf of, Defendants Brooks,
Nettleton, Hansen, Culbertson, and Jensen—the Defendants in the
consolidated case.

6.     If Defendants Brooks, Nettleton, Hansen, Culbertson, and Jensen choose to
waive service of process, their answer or pre-answer motion shall be due in
accordance with Rule 12(a)(1)(A)(ii). If Defendants Brooks, Nettleton,
Hansen, Culbertson, and Jensen do not waive service, or if counsel for
Defendant Fox lacks authority to do so on their behalf, counsel shall so
notify the Court via the ECF system, with a copy mailed to Plaintiff. In that
event, Plaintiff shall have an additional **60 days** to submit the physical
service addresses of those Defendants to the Court so that the Court may
effect service upon them, or the claims against them will be dismissed
without prejudice.

**ORDER - 20**

7.      Plaintiff's Request for Sanctions, Motion to Strike, and Seal Discovery

from the Record (Dkt. 46) is MOOT, as the substantive motion to which it

pertains (Dkt. 41) has already been denied as moot. (*See* Dkt. 48.)

8.      Plaintiff's Motion for Additional Interrogatories/Motion to Strike from the

Record Discovery Submitted by Defendant (Dkt. 51) is DENIED. The

Court has not yet entered a scheduling order governing discovery in this

case, and Defendant Fox has not submitted to the Court any discovery

responses. Rather, discovery is exchanged between parties, only, unless

properly attached as an exhibit to a motion or pleading.

9.      Plaintiff's objections to the Order of Reassignment and Consolidation,

construed as motions to sever (Dkt. 54 in Case No. 1:16-cv-00143-EJL &

Dkt. 8 in Case No. 1:16-cv-00478-EJL) are DENIED for the reasons stated

in the Order of Reassignment and Consolidation. (*See* Dkt. 53.)

DATED: March 7, 2017

Edward J. Lodge
United States District Judge

**ORDER - 21**