UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| KENT WILLIAMS, | Case No. 1:16-cv-00143-DCN[1] |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| GUARD FOX, | |
| Defendant. | |

Plaintiff Kent Williams, a prisoner in the custody of the Idaho Department of Correction, is proceeding pro se and in forma pauperis in this civil rights action. At the time of the events giving rise to Plaintiff's claims, Plaintiff was a pretrial detainee incarcerated at the Ada County Jail.

Plaintiff has been allowed to proceed, under 42 U.S.C. § 1983, on two types of First Amendment claims. He asserts that, in January 2016, Defendant Fox violated Plaintiff's (1) right to petition the government for redress and (2) right to be free from retaliation for the exercise of his constitutional rights. (*See* Dkt. 56, screening the second amended complaint pursuant to 28 U.S.C. §§ 1915 and 1915A).)

---

[1] This case was previously consolidated—as the lead case—with *Williams v. Brooks*, Case No. 1:16-cv-00478-EJL (D. Idaho). However, Plaintiff voluntarily dismissed the *Brooks* case. (*See* Dkt. 11 in *Brooks*.) Therefore, the only claims remaining in this action are those asserted by Plaintiff against Defendant Fox in Case No. 1:16-cv-00143-DCN.

MEMORANDUM DECISION AND ORDER - 1

Now pending before the Court are (1) Plaintiff's "Motion for a Protective Order"[2] and (2) Plaintiff's Motion for Partial Summary Judgment. (Dkt. 96, 97.) A dispositive motion (Dkt. 107) is also pending but will be addressed at a later date.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order denying Plaintiff's Motions.

## PLAINTIFF'S "MOTION FOR PROTECTIVE ORDER"

Plaintiff has filed a document entitled "Motion for Protective Order." (Dkt. 97.) In that Motion, Plaintiff asks "for a protective order shielding him from the defendant making public record and using as evidence in their defense personal correspondence illegally confiscated from plaintiff while he was a pre-trial detainee housed in the Ada County Jail." (*Id*. at 1.) However, because Plaintiff's Motion argues that this evidence is admissible, a protective order is not appropriate. Such orders may be utilized to address discovery issues—not the admissibility of evidence.

Additionally, Plaintiff has submitted no evidence to support his conclusory that the correspondence is forged or otherwise inauthentic. Thus, Plaintiff has not raised a "genuine question" about the authenticity of the correspondence or established that other circumstances would make it unfair for the Court to consider the evidence. Fed. R. Evid. 1003.

---

[2] The Court will grant Defendant's request for an extension of time to respond to this motion. The response is deemed timely.

MEMORANDUM DECISION AND ORDER - 2

Plaintiff also argues that any consideration of the correspondence would violate the Fourth Amendment. Plaintiff is incorrect. The exclusionary rule is not a personal constitutional right, and it does not apply in civil cases under § 1983; therefore, a governmental official may rely on illegally-seized evidence in defense against such a claim. *Lingo v. City of Salem*, 832 F.3d 953, 959 (9th Cir. 2016). Therefore, even if the correspondence was obtained in violation of the Fourth Amendment—which the Court does not address—they are not subject to exclusion on that basis.

Plaintiff's other objections—which are essentially arguments as to why the evidence should not be believed or should be considered in a light different from that urged by Defendant—do not go to the admissibility of that evidence. Therefore, Plaintiff's "Motion for a Protective Order" will be denied.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**1.  Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not

preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Where, as here, the moving party bears the ultimate burden of proof, that party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (internal quotation marks omitted). That is, the moving party "must establish beyond controversy every essential element" of the claim. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). All reasonable inferences which can be drawn from the evidence must be drawn in the light most favorable to the non-moving party—here, Defendant. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31.

**2.     Standard of Law Applicable to Plaintiff's Claims**

The standard governing First Amendment claims of incarcerated individuals was outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). There, the Court examined the free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The *Turner* Court identified four factors to consider when determining whether such a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards

MEMORANDUM DECISION AND ORDER - 4

and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-93.

The *Turner* analysis appropriately allows prison officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The deferential *Turner* analysis applies to pretrial detainees such as Plaintiff. *See Bull v. City and County of San Francisco,* 595 F.3d 964 (9th Cir. 2010). The United States Court of Appeals for the Ninth Circuit has clarified that, in applying the *Turner* test to pretrial detainees—who must not be punished—the jail has legitimate penological interests in security and safety, but not "in punishment and rehabilitation." *Id.* at 974 n.10. Therefore, in considering claims of pretrial detainees challenging jail regulations or policies, "courts must defer to the judgment of [jail] officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322-23 (2012).

The First Amendment to the United States Constitution guarantees the right to petition the government for redress of grievances. The right-to-petition applies to incarcerated individuals and includes the right to use a jail or prison grievance process, if such a process exists. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). However, frivolous "grievances" do not qualify as petitions for redress and, therefore, are not protected by the First Amendment. *See Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) ("Prisoners' grievances, unless frivolous, concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment.") (quoting *Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001, 1005 (7th Cir. 2005) (internal quotation marks omitted).

Although the Ninth Circuit Court of Appeals has not yet found a legitimate penological interest that supports policies prohibiting disrespectful language in jail or prison grievances, *see Brodheim v. Cry*, 584 F.3d 1262, 1273 (9th Cir. 2009), that court recently stated that *Brodheim*'s protection of disrespectful language "relates *only* to the narrow category of cases dealing with prison grievances." *Richey v. Dahne*, 733 F. App'x 881, 884 (9th Cir. April 25, 2018) (unpublished) (emphasis added). Therefore, if an inmate uses disrespectful language in some other context, then a court may find that the government has legitimate penological interests in maintaining the safety and security of guards and in maintaining harmonious relationships between guards and [inmates] to the extent possible." *Id.*

The First Amendment also includes the right to be free from retaliation by state actors for exercising constitutional rights, such as the right to petition for redress. An inmate asserting a First Amendment retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). When analyzing a jail official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory

MEMORANDUM DECISION AND ORDER - 7

motivation is not established simply by showing an adverse action by the defendant *after* protected speech; rather, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of his claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a jail or prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. As noted previously, a jail unquestionably has a legitimate interest in maintaining institutional order, safety, and security. *Rizzo*, 778 F.2d at 532; *see also Bull,* 595 F.3d at 974 n.10. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

3. **Factual Background**

Where material facts are in dispute, the Court has included the version of facts presented by Defendant—the non-moving party—for purposes of considering Plaintiff's Motion for Partial Summary Judgment. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Taken in the light most favorable to Defendant, the evidence is as follows.

When Plaintiff was confined in the Ada County Jail, Defendant Fox, an Ada County Sheriff's deputy, was assigned to the housing unit where Plaintiff was housed. Defendant's duties "included picking up inmate grievances and delivering those grievances for processing and response by the proper party." (Decl. of Landon Fox, dated April 26, 2016,[3] ¶ 4.) On January 11, 2016, Plaintiff placed a jail grievance form "outside his cell door for pick-up." (*Id.* ¶ 6.) Defendant read the form, which contained "disrespectful statements directed at jail staff and ... call[ed] jail staff inappropriate names." (*Id.* ¶ 7.) Defendant did not accept the grievance and told Plaintiff that, "since he did not express a grievable issue in the form[,] it was not a grievance and, therefore, would not be accepted as a grievance." (*Id.* ¶ 8.) Defendant "informed [Plaintiff] that abuse of the grievance system was a violation of the inmate code of conduct." (*Id.* ¶ 9.) Defendant returned the form to Plaintiff by sliding it under the cell door, and Plaintiff slid it back. "Since [Plaintiff] did not want to keep the form, I left it on the floor." (*Id.* ¶ 10.)

Later that same day, Plaintiff placed a second grievance form outside his cell door. Defendant read the form. Defendant again believed that Plaintiff was using the form not

---

[3] Although Fox's Declaration is dated April 26, 2016, this appears to be a typographical error, as the Declaration was filed with the Court on April 27, <u>2017</u>. This error is immaterial.

MEMORANDUM DECISION AND ORDER - 9

to seek redress in the grievance system, but "to write disrespectful statements directed at jail staff and to call jail staff inappropriate names." (*Id.* ¶ 12.) Defendant refused to accept the form, leaving it on the floor "next to the first form." (*Id.*) After Defendant left the forms outside of Plaintiff's cell door, Plaintiff did not ask that they be returned. Defendant states that he would have returned the forms had Plaintiff asked. (*Id.* ¶ 15.)

The next day, January 12, Defendant accepted a grievance form from Plaintiff; this grievance, according to Defendant, did "contain[] a substantive grievance": allegations that Defendant "had not processed the grievance forms on January 11, 2016" and that Defendant "had threatened physical violence against Williams." (*Id.* ¶¶ 16-17.) Defendant denies these allegations.

Defendant responded to Plaintiff's January 12 grievance, Plaintiff appealed, and the supervising deputy "supported [Defendant's] response on appeal." (*Id.* ¶¶ 18-20.) According to Defendant,

> I did not threaten [Plaintiff] with disciplinary action or with any physical violence as a result of his attempting to file grievances. I did inform him of the disciplinary consequences of abuse of the grievance system.... I did not initiate disciplinary action against [Plaintiff] regarding his use of the grievance forms to direct insults and inappropriate language toward jail staff without grieving an actual issue.

(*Id.* ¶ 21.)

4. **Plaintiff Is Not Entitled to Partial Summary Judgment**

Plaintiff has failed to "establish beyond controversy every essential element" of his petition-for-redress or retaliation claims. *S. Cal. Gas Co.*, 336 F.3d at 888. Although Plaintiff alleges that each of the two grievance forms grieved a specific issue, Defendant

states that they did not.[4] Instead, Defendant contends that the grievances contained only insults directed at prison staff. Therefore, Defendant has raised a genuine dispute as to whether the grievance forms actually contained a substantive grievance. This dispute prohibits the Court from granting summary judgment to Plaintiff on his petition-for-redress claims. Because an inmate's right to use disrespectful language to jail officials applies only "in the narrow context" of grievances, *Richey*, 733 F. App'x at 884, this issue is material to whether Defendant's actions violated Plaintiff's constitutional rights.

The Court also cannot grant Plaintiff summary judgment on his retaliation claims. Plaintiff argues that Defendant acted with a retaliatory intent, but Defendant has testified—and therefore raised a genuine dispute—that he did not. This dispute is also material, because to prevail on his retaliation claims, Plaintiff must establish a retaliatory motive.

## 5. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Partial Summary Judgment.

**ORDER**

**IT IS ORDERED:**

1. Defendant's Motion for Extension of Time (Dkt. 102) to respond to Plaintiff's "Motion for Protective Order" is GRANTED.

---

[4] There are no copies of the two grievance forms in existence any longer. Therefore, the only evidence as to their content—other than the undisputed fact that they contained disrespectful language—is the conflicting testimony of the parties. Plaintiff alleges that the forms are missing only because Defendant threw them away, but Defendant denies this allegation.

2. Plaintiff's "Motion for Protective Order" (Dkt. 97) is DENIED.

3. Plaintiff's Motion for Partial Summary Judgment (Dkt. 96) is DENIED.

4. Plaintiff's "request that the Court respond to [Plaintiff's] motions in a more timely manner" (Dkt. 114) is DENIED as MOOT.

5. No party may file anything further in this case until the Court issues a decision on Defendant's motion for summary judgment, which is ripe for adjudication. Violations of this or any other Court Order may lead to sanctions, up to and including dismissal or default judgment. If the Court determines that further briefing or a hearing on the motion is warranted, it will issue a sua sponte order accordingly.

DATED: September 28, 2018

David C. Nye
U.S. District Court Judge