UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>GUARD FOX,<br><br>    Defendant. | Case No. 1:16-cv-00143-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Plaintiff Kent Williams,[1] a prisoner in the custody of the Idaho Department of

Correction, is proceeding pro se and in forma pauperis in this civil rights action. At the

time of the events giving rise to his claims, Williams was a pretrial detainee incarcerated

at the Ada County Jail.

The Court allowed Williams to proceed, under 42 U.S.C. § 1983, on two types of

First Amendment claims: (1) the right to petition the government for redress and (2) the

right to be free from retaliation for the exercise of his constitutional rights. *See* Dkt. 56.

Currently pending before the Court are (1) Fox's Motion for Summary Judgment

(Dkt. 107), (2) Williams' Request for Assistance with Preparing for Trial (Dkt. 116),

Request for Status (Dkt. 117), and Motion to Reconsider (Dkt. 119). Having fully

reviewed the record, the Court finds that the facts and legal arguments are adequately

---

[1] This case was previously consolidated—as the lead case—with *Williams v. Brooks*, Case No. 1:16-cv-00478-EJL (D. Idaho). However, Williams voluntarily dismissed the Brooks case. *See* Dkt. 11 in Case No. 1:16-cv-00478.

presented in the briefs and record and that oral arguments is unnecessary. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). Accordingly, upon review, the Court GRANTS Fox's Motion for Summary Judgment and DENIES as MOOT Williams' Request for Assistance Preparing for Trial.

## II. BACKGROUND

Where material facts are in dispute, the Court has included the version of facts presented by Williams—the non-moving party—for purposes of considering Fox's Motion for Summary Judgment. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The Court also notes that Williams failed to address Fox's assertions of undisputed facts by not filing "a separate statement…of all [disputed] material facts." Dist. Idaho Loc. Civ. R. 7.1(c)(2). Thus, "the Court may consider the uncontested material facts as undisputed for purposes of consideration of the motion [for summary judgement]." *Id.* at (e)(2). However, the Court may also examine factual allegations in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed. R. Civ. Pro. 56(c). Taken in the light most favorable to Williams, the evidence is as follows:

While Plaintiff Kent Williams was confined at the Ada County Jail ("ACJ"), Defendant Guard Fox, an Ada County Sheriff's deputy, was assigned to Plaintiff's housing unit.

On January 11, 2016, Williams slid a prisoner grievance form under his cell door for pickup in accordance with ACJ policies and procedures. The form contained a complaint against a guard who had refused to accept a form Williams had slid under his

cell door earlier that day. The unnamed guard did not process the form because it contained disrespectful language. At approximately 7:00 p.m. on January 11, 2016, Fox retrieved Williams' form. After reading the form, Fox told Williams that he would not process it because he believed it contained disrespectful language. Fox alleges—and Williams disputes—that the form also did not grieve an actual issue. Fox told Williams, "You will not address an Ada County Deputy disrespectfully." Dkt. 107-2 ¶ 7. Fox slid the form back to Williams and threatened to issue a disciplinary report should Williams continue using disrespectful language in grievance forms.

Williams asked Fox to accept the form a second time and slid it back under the door. Fox did not retrieve the form and the form remained on the floor. The form was presumably discarded as trash.

Williams immediately slid a second grievance form under his door, grieving Fox's refusal to process the first form. Fox retrieved and read the second form and tossed it into the air where it landed on the floor next to the first form. Fox alleges—and again, Williams disputes—that this second form likewise did not grieve an actual issue.

On January 12, 2016, Williams submitted grievance form 8843. Fox processed form 8843, which grieved the decision:

> [O]f guard fox to throw away my outgoing mail. On 1/11/16 I put a grievance out my cell door for 7PM mail pick up. Fox took it, read it and refused to take it. It was left on the tier. At 7:15, 1/11/16, I then put out the cell door a grievance grieving fox refusing to take and process my mail (courts consider grievance legal mail). He took it, read it and said, "first chance I get at your neck…" and then tossed it in the air onto the tier where it was presumably thrown away.

Dkt 43-1, at 2.

Fox responded to grievance form 8843, stating:

> The grievances you [Williams] have been submitting are not acceptable. You are not grieving any issues, you are making statements and calling deputies names and being disrespectful. You have already been written up for this issue. Do not continue to abuse the grievance system.

> You say that I said, "First chance I get at your neck". I never said any such thing. Please stop making false accusations.

*Id.* Williams appealed Fox's response, and Fox's response was upheld.

Prior to his January 11 grievances, Williams submitted grievance form 8821 on January 8, 2016. Grievance form 8821 grieved Williams' placement in segregation for an ACJ infraction for using disrespectful language in a prior grievance form. ACJ staff reviewed and upheld the discipline because it was already "addressed in grievance 8822." ACJ staff instructed Williams "not [to] submit multiple grievances on the same issue," otherwise he might "receive formal discipline." Dkt. 43-1.

### III. LEGAL STANDARD

Summary judgement is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgement is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 411 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present

evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgement if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgement. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

Establishing a "genuine" dispute requires the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *Id.* (citation omitted). "Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citation omitted). "Hence the nonmoving party may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *Id.* "Instead, it must produce at least some

'significant probative evidence tending to support the complaint.'" *Id.* (citation omitted).

## IV. ANALYSIS

In this case, the Court permitted Williams to proceed with two First Amendment claims under 42 U.S.C. § 1983. Dkt. 56. First, the Court allowed Williams to proceed with his right to petition for redress claim, and second, the Court acknowledge that Williams' might have a valid retaliation claim. Dkt. 56. To succeed on a claim against an individual "under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Court will address each claim in turn. First, however, the Court reviews general First Amendment jurisprudence in the context of civil rights claims filed by incarcerated persons.

The standard governing First Amendment claims of incarcerated individuals was outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). There, the Court examined the free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The *Turner* Court identified four factors to consider when determining whether such a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates";

(3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-93.

The *Turner* analysis appropriately allows prison officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The deferential *Turner* analysis also applies to pretrial detainees such as Williams. *See Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010). The United States Court of Appeals for the Ninth Circuit has clarified that, in applying the *Turner* test to pretrial detainees—who must not be punished—the jail has legitimate penological interests in security and safety, but not "in punishment and rehabilitation." *Id.* at 974 n.10. Therefore, in considering claims of pretrial detainees challenging jail regulations or policies, "courts must defer to the judgment of [jail] officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322-23 (2012).

**A. Right to Petition for Redress**

The First Amendment to the United States Constitution guarantees the right to petition the government for redress of grievances. The right-to-petition applies to incarcerated individuals and includes the right to use a jail or prison grievance process, if such a process exists. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). However, frivolous "grievances" do not qualify as petitions for redress and, therefore, are not protected by the First Amendment. *See Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) ("Prisoners' grievances, unless frivolous, concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment.") (quoting *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (internal quotation marks omitted).

Although the Ninth Circuit has not yet found a legitimate penological interest that supports policies prohibiting disrespectful language in jail or prison grievances, *see Brodheim v. Cry*, 584 F.3d 1262, 1273 (9th Cir. 2009), that court recently stated that *Brodheim*'s protection of disrespectful language "relates *only* to the narrow category of cases dealing with prison grievances." *Richey v. Dahne*, 733 F. App'x 881, 884 (9th Cir. April 25, 2018) (unpublished) (emphasis added). Therefore, if an inmate uses disrespectful language in some other context, a court may find that the government has legitimate penological interests in maintaining the safety and security of guards and in maintaining harmonious relationships between guards and [inmates] to the extent possible." *Id.*

The record in this case does not support Williams' assertion that Fox violated his right-to-petition. The record illustrates that the rejected January 11 grievance forms contained disrespectful statements. Although disrespectful statements in grievances may receive First Amendment protections, *see Bradley*, 64 F.3d 1276, 1279, Williams cannot show that his grievances qualified as petitions for redress in the first instance. *See Jones*, 791 F.3d 1023, 1035. The record does not contain any physical evidence as to the precise language in the grievances.[2] Thus, the Court must analyze what little evidence is available to determine whether Williams filed a frivolous grievance. *Id.*

The Court begins by examining the disputed testimony of the parties. The testimonies of the parties do not support Williams' claim and unfortunately, Williams cannot produce physical evidence at trial to support his claim either. Any Testimony from either party regarding the contents of the January 11 forms is hearsay, and likely inadmissible at trial. Even if such testimony were admissible, the Court must "accord great deference" to Fox's decisions. *Michenfelder*, 860 F.2d 328, 331. Fox testified that the forms were rejected because they did not grieve actual issues, thus suggesting the forms were not qualified petitions. Williams' "evidence" to the contrary consists of "mere allegations" and statements that he "will discredit [Defendant's] evidence at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d 626, 630. This, however, is insufficient to withstand summary judgment. Williams cannot overcome the presumption given to Fox's evidence

---

[2] Although Williams may argue that these grievance forms are unavailable because Fox discarded them, Williams neglected to preserve the first form when he slid it under his cell door after Fox refused to process it as a grievance and returned it to him. Thus, Williams neglected to preserve his own evidence.

by his testimony alone, and where the parties already conducted discovery, Williams cannot produce any further evidence if the matter proceeded to trial. Thus, Williams cannot produce any "significant probative evidence tending to support" his complaint. *Id.*

Next, the Court turns to contemporaneous evidence to see if it might shed some light on the grievance process and Williams' current allegations. In reviewing the record, what physical evidence is available appears to suggest that Williams was filing frivolous grievances. *See Jones*, 791 F.3d 1023, 1035. The January 8 grievance report reveals that Williams received discipline for filing multiple grievances on the same issue—guards not processing grievances containing disrespectful language. Williams lost his appeal apparently because he ignored previous warnings to refrain from continuously grieving the same issue. By his own admission, Williams' January 11 grievances also complained of grievance rejections for disrespectful language. Against this backdrop, while the Court does not know the exact contents of Williams' grievance, based upon his testimony, and that of Fox, it appears that Williams' January 11 grievances were nothing more that frivolous attempts to re-grieve an issue ACJ had already addressed. Thus, the January 11 grievances do not qualify as petitions for redress protected by the First Amendment. Therefore, Fox has carried his burden in establishing that there are no true material facts at issue, *see T.W. Elec. Serv., Inc.* 809 F.2d at 630, and is entitled to a summary judgement on the Williams' right to petition claim. *Celotex Corp.*, 477 U.S. 317, 322.

## B. Retaliation

The First Amendment also includes the right to be free from retaliation by state

actors for exercising constitutional rights, such as the right to petition for redress. An

inmate asserting a First Amendment retaliation claim must show the following: "(1) ...

that a state actor took some adverse action against the inmate (2) because of (3) that

prisoner's protected conduct,. . . that such action (4) chilled the inmate's exercise of his

First Amendment rights, and (5) [that] the action did not reasonably advance a

legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)

(footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to

support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see

also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that

mere speculation that defendants acted out of retaliation is not sufficient."). When

analyzing a jail official's proffered reasons for allegedly retaliatory conduct, the Court

must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65

F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action

that chills the exercise of protected speech. The proper inquiry asks whether the official's

action "would chill or silence a person of ordinary firmness from future First Amendment

activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir.

1999) (internal quotation marks omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal

connection between a defendant's retaliatory animus and [the plaintiff's] subsequent

injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory

motivation is not established simply by showing an adverse action by the defendant *after*

protected speech; rather, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of his claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the "but-for" cause of an adverse action by a jail or prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. As noted previously, a jail unquestionably has a legitimate interest in maintaining institutional order, safety, and security. *Rizzo*, 778 F.2d at 532; *see also Bull,* 595 F.3d at 974 n.10. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

Here, Williams cannot support his retaliation claim because he did not engaged in "protected conduct." *Rhodes*, 408 F.3d 559, 567-68. However, even if Williams had

engaged in protected conduct, he cannot establish a nexus between "[D]efendant's retaliatory animus" and his alleged injury. *Hartman*, 547 U.S. 250, 259. Williams commits "the logical fallacy of *post hoc*, *ergo propter hoc*," *Huskey*, 204 F.3d 893, 899, by alleging that the conduct that violated his right-to-petition simultaneously violated his right to be free from retaliation. Williams' allegation of retaliatory animus is inconsistent with Fox's decision to process grievance form 8843. If Fox's refusal to process earlier grievances of Williams was motivated by animus, it remains unclear why that animus was not present later the same day when Fox processed form 8843. Since form 8843 did not contain inappropriate language, it seems more likely that Fox made his decision whether to process Williams' grievances based on the content of the form, not his personal feelings toward Williams.

Even if Williams could establish the required nexus for a retaliation claim, Fox's actions did not chill Williams from exercising his right-to-petition. See *Rhodes*, 408 F.3d 559, 567-68. Williams continued filing grievances despite previous rejections for disrespectful language by other unnamed guards. What's more, Williams continued to submit grievances to Fox, and Fox even processed grievance form 8843. Thus, Williams is unable to "establish the existence" of at least two "element[s] essential to [his] case." *Celotex Corp.*, 477 U.S. 317, 322. Accordingly, Fox has also carried his burden on this claim. Williams has failed to produce sufficient evidence to counter Fox's assertions and as such, Fox is entitled to a summary judgement on Williams' retaliation claim. *Id.*

### C. Qualified Immunity

As another independent basis for granting summary judgment, the Court notes that

Fox is entitled to qualified immunity. Although Williams sued Fox in his individual capacity, he fails to persuade the Court that Fox is not entitled to qualified immunity for his actions.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011).

In determining whether an officer is entitled to qualified immunity on summary judgment, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, "(1) ... show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his or her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). If there is a material dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

To determine whether the right was clearly established, the Court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged acts. *See Osolinski v. Kane*,

92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the district court should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *See id.*

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... [but] in the light of pre-existing law the unlawfulness must be apparent." *Creighton*, 483 U.S. at 640, 107 S.Ct. 3034 (internal citations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (*citing Ashcroft v. al–Kidd*, 563 U.S. at 741).

Here, Fox qualifies for immunity because prison policies regulating inappropriate language in grievances are not clearly unconstitutional and Fox acted in accordance with ACJ's policies. The Ninth Circuit does not extended an absolute First Amendment right to prisoners to use offensive language in grievances.[3] The record shows that Fox followed

---

[3] Williams' reliance on the holding in *Bradley v. Hall*, 64 F.3d 1276, to support his claim that inappropriate language in prison grievances receives First Amendment protections is misplaced. The prison policy in *Bradley* "though facially valid, [was] invalid as applied to Bradley's written grievance." *Bradley*, 64 F.3d 1276, 1281. Thus, the Ninth Circuit panel's holding did not generally extend rights to all prisoners. Importantly, the reasoning in *Bradley* has received negative treatment throughout the Ninth

ACJ policies by rejecting Williams' grievances that contained inappropriate language or did not grieve actual issues. A reasonable deputy in Fox's position could justifiably believe that rejecting grievances that did not comply with jail policies would not violate a prisoner's Constitutional rights. Even if the Court found Fox's rejection of William's grievances to violate his rights, Fox had no way of reasonably knowing that he violated those rights when he followed ACJ's policies. Thus, Fox qualifies for immunity, and therefore, cannot be held personally liable for ACJ's policies.

### D. Request for Assistance

Williams has also filed a Request for Assistance with Preparing for Trial (Dkt. 116) and a Request for Status and Assistance (Dkt. 117). Where the Court has granted Fox's Motion for Summary Judgment as to all of Williams' remaining claims, Williams is unable to proceed to trial. Accordingly, Williams' Request for Assistance with Preparing for Trial is DISMISSED as MOOT. In ruling affirmatively on Fox's Motion for Summary Judgment, judgement will be entered in favor of Fox and this case will be closed. Thus, the "status" of the case will be known to Williams shortly and no further action will be necessary or allowed. Similarly, Williams' Motion for Status and Assistance is DISMISSED as MOOT.

### E. Motion to Reconsider

As a final matter, Williams recently filed a Motion to Reconsider. Dkt. 119. In this

---

Circuit. *See Silvia v. Di Vittoror*, 658 F.3d 1090 (9th Cir. 2011). Thus, *Bradley* does not clearly establish that inappropriate language in prison grievances receives First Amendment protections.

Motion, Williams asks the Court to reconsider its prior decision (Dkt. 115) and claims the Court has been unduly prejudicial towards him. In support of this argument, Williams asserts that the Court's denial of his summary judgment motion—as well as other motions—was erroneous and that he cannot appeal. He also laments how long it has taken the Court to rule on certain motions. Finally, Williams asserts that the Court's prior directive that neither party file anything until the Court ruled on the already pending motions was unfair and hindered his judicial rights.

The Court has reviewed Williams' Motion, as well as the prior Decision (Dkt. 115) and finds no prejudice to Williams.

First, Williams does not state what legal authority gives him the right to ask for redress or reconsideration. This alone is sufficient reason to deny the motion as it lacks any cognizant legal basis.

Second, against the Court's directive, Williams filed three motions (including the instant Motion). Despite his failure to follow the Court's orders, the Court has reviewed and analyzed each Motion Williams filed.

Third, there are only certain motions or arguments that qualify for an interlocutory appeal. The Court finds none present here. If Williams wishes to appeal any Decision of the Court, he is free to do so at the appropriate time.

Finally, the Court's prior order—although not in favor of Williams—was not prejudicial, egregious, or unfair. The Court has hundreds of cases and it simply takes time to get to each one. In its prior decision—as in the current decision—the Court performed an in-depth review of all pending motions and determined which should be granted and

which should be denied. The bare assertion that the Court's failure to grant certain motions in Williams' favor is prejudicial is insufficient to rise to the level of reconsideration. Williams has not presented any legal authority illustrating why the Court was wrong: he simply claims the Court was.

In sum, the Court finds nothing in its review of Williams' Motion, or the prior Decision, warrants review. Accordingly, the Motion is **DENIED**.

## V. CONCLUSION

In this case, Fox has established that no genuine disputes remain "as to any material fact[s]" and he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Williams has failed to identify any "substantial evidence showing [ACJ] policies" for inmate grievances are "unnecessary or unjustified response[s] to problems of jail security," *Florence*, 566 U.S. 318, 322-23, and failed to produce any disputed facts in support of his right-to-petition claim or his retaliation claim. The evidence on record—specifically that Fox had processed Williams' grievances on other occasions that were free of disrespectful language—undercuts Williams argument that Fox was prohibiting him from engaging in his constitutionally protected right to petition the government for redress or retaliating against him for exercising his rights. Additionally, while disrespectful language may be protected by the First Amendment generally, there is a legitimate penological interest—namely safety and order—in prohibiting that type of language in the prison system.

Finally, while some dispute may exist as to the actual contents of Williams' grievances—the language itself, or whether any contained either (1) an actual grievance

or (2) a grievance that had not already been fully disposed of—there is no question that Fox properly followed ACJ policy. Williams' bare opinions, with nothing more, are insufficient to defeat summary judgment. Upon review, the Court finds that there are no disputed material facts related to either claim as alleged by Williams. Accordingly, Fox is entitled to summary judgment.

## VI. ORDER

**IT IS ORDERED:**

1.   Fox's Motion for Summary Judgement (Dkt. 107) is GRANTED.

2.   Williams' Request for Pretrial Assistance (Dkt. 116) is DISMISSED as moot.

3.   Williams' Request for Status (Dkt. 117) is DISMISSED as MOOT.

4.   Williams' Motion for Reconsideration (Dkt. 119) is DENIED.

5.   The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: March 26, 2019

David C. Nye
Chief U.S. District Court Judge