UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>LANDON FOX, Guard,<br><br>    Defendant. | Case No. 1:16-cv-00143-DCN<br><br>**ORDER ON PENDING MOTIONS** |

  Pending before the Court are several pretrial motions filed by the parties. Having reviewed the motions, the Court enters the following Order.

## REVIEW OF PENDING NOTICES AND MOTIONS

**1. Dkts. 201, 211, 214, 215, 217, 219**

  Plaintiff has reported that he and the Idaho Department of Correction ("IDOC") have differing views as to his access-to-courts rights at the Idaho Maximum Security Prison ("IMSI"). Plaintiff requests that the court "provisionally hold" his pending motions "until the court orders IDOC to provide copy service so he can provide documents to support the motions." Dkt. 201. Plaintiff does not explain, however, which exhibits are missing that might further support his motion in limine, his reply to Defendants' motion in limine, or the other requests that are at issue. His vague request that he intends to offer additional support for his motions will be denied. A party is not entitled to simply submit exhibits without a thorough explanation in the motion regarding how the exhibit is relevant. Plaintiff has not shown how the content of his motions was not adequate to explain what

was contained in the exhibits he was unable to attach.

Plaintiff states that IMSI is not cooperating with his requests to send out his legal mail. The Court previously ordered counsel for Defendant to consult with the IDOC to determine the proper procedures for Plaintiff to access the courts. Defendant's counsel has filed the declaration of Robert Wheiler, explaining the procedures, and Plaintiff has filed a response. Wheiler has included a 29-page individual activity log that documents each request Plaintiff made to the legal resource center, the response, and the many tasks the paralegals have undertaken for Plaintiff. Dkt. 215, at 6–34.

The Court agrees that Plaintiff must follow the prison's normal procedures without exception. Legal mail is regularly routed through the legal resource center. Plaintiff's indigent legal mail will continue to be routed per prison policy because of the importance of the record-keeping aspect of this practice. The legal assistants log the legal mail, which prevents prisoners from asserting that there is no record of whether their mail was processed. If Plaintiff desires his mail to go straight to the mailroom, he must pay for postage and envelopes.

Plaintiff also requests that, "[s]ince there were not copies made for Plaintiff . . . the court [should] order IDOC to pay costs of having the court clerk to reproduce these (and all uncopied motions and filings) documents and give [them] to Plaintiff." Dkt. 201, at 1–2. Plaintiff asserts that it is inherently unfair that he has no copies for his record. He does not explain exactly which documents were not copied. Wheiler explains how the copy process works. Institutional mail may sometimes be slow in returning his copies, but that is a consequence of incarceration. Plaintiff does not have the right to have copies returned

to him in person.

The Court also clarifies for Plaintiff that the Wheiler declaration is for purposes of court administration only and is not intended to be introduced as evidence at trial.

Related to prison access-to-court issues, Plaintiff has filed a "Request for a Plan B," in which Plaintiff again complains that the IDOC is not providing him with copies of his filings. This document again contains no details about exactly which copies are missing. This request will be denied, based on the discussion directly above.

2. **Dkt. 202**

Plaintiff requests that the Court issue a transport order for him. The Court will issue a transport order for him and any prisoner witnesses closer to trial.

3. **Dkt. 208**

### A. All Defendant's Witnesses and Exhibits

Plaintiff asserts that all of Defendant's witnesses and exhibits are irrelevant. Because the Court does not agree with Plaintiff's interpretation of the law or his interpretation of the scope of the Ninth Circuit's remand order upon which his objection is based, the request will be denied. Where the law is unsettled, as here, the Court is obligated to survey all of the law, determine which law applies to the specific fact patterns and disputes at issue, determine whether extensions of the law are appropriate, and set forth that law for the jury. Plaintiff is always free to appeal the Court's rulings in due course—that is simply the natural process of the court system. Appeals help clarify unsettled areas of law not only for a particular case at issue, but for future cases.

The First Amendment right to petition the government is the overarching general

right at issue in this case. The right to access the courts is "but one aspect of the right to petition" the government. *California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510 (1972). The First Amendment right to file jail grievances containing disrespectful language exists because it is an extension of the right to access the courts. There is no freestanding First Amendment free speech right to use disrespectful language in jail except in the context of access-to-courts written grievances—the first required step to access the courts.

An open question of law in the Ninth Circuit is whether inmates have a right to file frivolous grievances. Courts in other jurisdictions have determined that there is no such right. *See Sprouse v. Babcock*, 870 F.2d 450, 452–53 (8th Cir. 1989); *Ayers v. Uphoff*, 1 F.App'x 851, 855–56 (10th Cir. 2001); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 349–50 (N.D.N.Y. 2010); *Hancock v. Thalacker*, 933 F. Supp. 1449, 1486 (N.D. Iowa 1996). This Court agrees, based on the principle that there is no constitutional right to file frivolous litigation, *Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007) (finding California vexatious litigant statute constitutional), and there is no reason that this rule should not be applied to grievances, which have First Amendment protection for disrespectful language in jail only because they are the first required step in the access to courts process. Importantly, in *McDonald v. Smith*, 472 U.S. 479 (1985), the Supreme Court reiterated that the right-to-petition clause should not be "elevate[d] . . . to special First Amendment status." *Id*. at 485. The Court explained that "[t]he Petition Clause . . . was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble"; that "[t]hese First Amendment rights are inseparable"; and, therefore, "there is

no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions." *Id*.

Based on these principles, which the Court anticipates will be embodied in simple form in the jury instructions, the Court concludes that a foundational factual dispute in this case is whether the missing grievances were frivolous. Legitimate grievances are protected, even if disrespectful; but both respectful and disrespectful grievances that are frivolous, vexatious, duplicative, or a part of a pattern of calculated harassment are not protected. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) ("In two other unpublished orders, we held that certain prisoners who had threatened to file grievances were not engaged in protected conduct, but in each case we based our conclusion on the fact that the threatened grievance was frivolous and that prisoners do not have a protected right to file frivolous grievances. These two orders are consistent with the possibility that, had the prisoners threatened to file legitimate grievances, the conduct would have been protected.") (cleaned up).

Accordingly, Defendant's witnesses and exhibits generally appear to be relevant. The Court will entertain specific objections at trial to individual witnesses' testimony and particular exhibits.

### B. Exhibits: Plaintiff's Alleged Letters Discussing his Planned Lawsuit

Plaintiff asks that the Court prohibit Defendants from introducing into evidence copies of letters between Plaintiff and a third party who is not an attorney. The letters discuss Plaintiff's plan to manufacture a First Amendment cause of action by submitting to jail officials grievances containing disrespectful language.

ORDER ON PENDING MOTIONS - 5

The law permits jail officials to monitor and read an inmate's nonlegal mail. Jail employees intercepted Plaintiff's correspondence about the manufactured First Amendment claim after he was placed on "mail watch" for an unrelated legitimate security reason. *See* Dkt. 221, at 2. Nothing in the manner by which Defendants obtained the letters prevents them from being introduced as evidence at trial.

Plaintiff questions the authenticity of the copies. He does not concede that he wrote the letters. Federal Rule of Evidence 1003 provides: "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Defendants will be permitted to attempt to lay foundation with witnesses (including Plaintiff) before the letters can be admitted into evidence. The jurors will also have other documents written by Plaintiff to compare the handwriting for themselves. The "best evidence rule" does not prohibit the correspondence; the original letters are unavailable because they were mailed to the intended recipients.

Plaintiff also questions the relevance of the letters. A key dispute for the jury to decide in this case is whether the two at-issue grievances that no longer exist contained legitimate requests protected by the First Amendment or frivolous unprotected requests. The Court finds that the letters are relevant to that issue. Defendant contends that the grievances were not grieving anything, which would be the equivalent of a frivolous request. The jury may find that Plaintiff's plan discussed in the letters weighs in the balance to show that it is more likely than not that he did not a have legitimate request. *See* Federal Rule of Evidence 401 (evidence is relevant if it has any tendency to make a fact more or

ORDER ON PENDING MOTIONS - 6

less probable than it would be without the evidence). Or, the jury may decide on the totality of the evidence, including the letters, that the content of the missing grievances was legitimate. Plaintiff's objection addresses the weight of this evidence, rather than its admissibility.

Plaintiff has not shown that admitting the copies of the letters would be unfair to him—the letters were allegedly created by him and relate to the very foundation of the case. *See* Fed. R. Evid. 1003. Neither is the probative value of these letters substantially outweighed by unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evidence 403. To the contrary, the letters may explain Plaintiff's motivation for filing the at-issue grievances.

The jury instructions will make it clear that it is not the fact that an inmate wants to test the constitutionality of the jail grievance system by using disrespectful language that makes a grievance frivolous or not legitimate; but it is the content of the grievance that shows whether it is frivolous or legitimate. *See generally Richey v. Stemler*, No. C19-0769-RAJ-MAT, 2020 WL 8370941, at *4 (W.D. Wash. Apr. 16, 2020), *report and recommendation adopted in part, rejected in part*, No. 2:19-CV-00769-RAJ, 2021 WL 322708 (W.D. Wash. Feb. 1, 2021) ("Despite plaintiff's view of the [Offender Grievance Program] as simply a money-making venture, the actual point of the program is to promote effective communication between staff and prisoners and to resolve actual conflicts and grievances."). In addition, it is not the language used in the grievance that makes it

ORDER ON PENDING MOTIONS - 7

vexatious or duplicative, or marks it as part of a pattern of calculated harassment—it is a matter of content and frequency.

Plaintiff also claims a work product privilege as to the letters. However, because Plaintiff asserts that he did not write the letters, he has no claim to a work product privilege. In addition, disclosure of work-product materials to an adversary waives the work-product privilege. *See, e.g., In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988); *In re Doe*, 662 F.2d 1073, 1081–82 (4th Cir. 1981). Here, because Defendants had the right to review Plaintiff's outgoing mail under the circumstances, and Plaintiff knew that his correspondence could be monitored when he sent it, the Court concludes that any work product privilege has been waived.

### C.  Party Testimony: Content of Missing Concern Forms

Plaintiff asks that Defendant not be permitted to testify about the content of the missing grievances except to say that it is Defendant's opinion that they were disrespectful. The Court earlier preliminarily denied Defendant's similar request for an irrebuttable presumption that Plaintiff engaged in intentional spoilation of the evidence when he caused their loss or destruction; Plaintiff now asks for the same against Defendant. For the same reasons this argument was rejected earlier, it will be denied. Both parties will be permitted to testify what the grievances contained, and the jurors will determine credibility and the weight to be given to the testimony.

Plaintiff also desires to prevent Defendant from testifying that he now remembers what the grievances contained, because, Plaintiff asserts, in discovery responses Defendant said he did not remember their content after the passage of six years. Defendant counters

ORDER ON PENDING MOTIONS - 8

that Plaintiff is misconstruing his responses. A difference in perception in what the discovery responses mean is not a proper reason to foreclose trial testimony on this topic. Plaintiff can cross-examine Defendant and attempt to impeach him with the exact wording of the discovery responses.

### D. Exhibits and Party Testimony: Plaintiff's Other Grievances

Plaintiff also wants to foreclose Defendant from introducing Plaintiff's other grievances. If Defendant is able to show that Plaintiff filed other grievances that (regardless of their language) were frivolous, vexatious, duplicative or constituted a pattern of calculated harassment, then that evidence makes it more likely than not that the missing grievances were of the same nature. Or, Plaintiff may be able to show that all of his grievances were appropriate and legitimate—without regard to the language in the grievances—which bolsters his position. The evidence likely will be admissible. The Court will reserve ruling on this in a blanket manner and review specific objections to individual grievances. It would be helpful for Defendant to lodge electronic copies of the other grievances with the Court immediately to aid in the decisionmaking as to relevance of the objections and drafting of jury instructions.

### E. Testimony and Exhibits: Plaintiff's Felony Convictions

Plaintiff also desires to limit admission of evidence of his felony convictions. Federal Rule of Evidence 609 provides that the following "must be admitted" at trial to aid the jury in its determination of a witness's character for truthfulness: evidence that a party was convicted of a crime punishable by more than one year where the evidence is less than ten years old. *See* Fed. R. Evid. 609(a)&(b). This rule is subject to Rule 403, providing that

evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Plaintiff is currently incarcerated at an IDOC facility, serving sentences for two counts of felony robbery, felony use of a firearm in the commission of a crime, felony unlawful possession of a firearm, and a persistent violator enhancement, arising from a judgment in Ada County case CRFE-2015-0012724 on May 27, 2016. *See* Dkt. 222-1, Declaration of Timothy Lamb ⁋ 4, Exhibit C.

The persistent violator statute, Idaho Code § 19-2514, "does not create a new crime, but instead provides for the imposition of greater punishment for the underlying conviction." *Lopez v. State*, 700 P.2d 16, 17 (Idaho 1985). Therefore, unless Defendant shows another ground for admission, the sentencing enhancement is inadmissible.

Petitioner's four recent crimes carry a punishment exceeding one year of imprisonment. *Id*. Evidence of these crimes must be admitted in this civil case under Rule 609(a)(1)(A) unless Rule 403 applies.

Any felony conviction may be used to impeach. *U.S. v. White*, 463 F.2d 18, 20 (9th Cir. 1972). The decision to allow evidence of any crime is one of discretion that is left to the trial court judge. *U.S. v. Rowe*, 92 F.3d 928, 933 (9th Cir. 1996); *U.S. v. Carter*, 528 F.2d 844, 847 (8th Cir. 1975). The Ninth Circuit analyzes five factors to determine if the probative value of the proposed evidence will be substantially outweighed by prejudice: (1) impeachment value of the prior crime; (2) the point in time of conviction and the defendant's subsequent history; (3) similarity between the past crime and charged crime;

(4) importance of the defendant's testimony; and (5) centrality of the defendant's credibility. *U.S. v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995).

Here, the factors apply as follows:

> **Factor (1):** The impeachment value of the robbery convictions is high; the Ninth Circuit has determined that "[p]rior convictions for robbery are probative of veracity." *U.S. v. Givens*, 767 F.2d 574, 580 (9th Cir. 1985); *U.S. v. Oaxaca*, 569 F.2d 518, 527 (9th Cir. 1978 (convictions for theft are "more indicative of credibility than, say, convictions for crimes of violence.") (cleaned up). As to the possession of a firearm convictions, which implicate violent crimes, other courts have held that with respect to "crimes of serious violence which resulted in lengthy prison terms, the nexus with credibility is present but to no great extent." *Clem v. Lomeli*, No. 2:05-CV-02129-JKS, 2007 WL 2688842, at *2 (E.D. Cal. Sept. 13, 2007). *See also Patterson v. City of Chicago*, No. 15-cv-4139, 2017 WL 770991, at *8 (N.D. Ill. Feb. 28, 2017) ("[U]nlawful use of a weapon . . . ha[s] little to do with truthfulness.").
>
> On the other hand, evidence showing that the party was convicted of multiple felonies has been deemed probative of credibility. *See State v. Stone*, 767 N.W.2d 735, 743 (Minn. Ct. App. 2009), *aff'd*, 784 N.W.2d 367 (Minn. 2010). This Court agrees with those courts that have found that, as Rule 609(a) provides in mandatory terms, "[j]ust because a crime is not directly related to truth or falsity does not mean that evidence of the conviction has

no impeachment value." *State v. Brouillette*, 286 N.W.2d 702, 707–08 (Minn. 1979).

**Factor (2):** The six-year-old crimes are relatively new in the context of the ten-year rule, and because Plaintiff is a persistent violator, his subsequent history has required his continued incarceration, thus foreclosing any argument that he has rehabilitated himself.

**Factor (3):** Not relevant because this is civil case.

**Factors (4) & (5):** Plaintiff's testimony is crucial, and his credibility is central because this entire case turns on whether the jury believes that the grievances were legitimate and not part of a pattern of calculated harassment.

Weighing the factors together, the Court concludes that Defendants may question Plaintiff about his robbery convictions, but may question him only with a "sanitized" version of the additional firearms convictions. Defendants may not reference the nature of the firearms convictions. Weapons offenses potentially imply violent conduct and carry a risk of prejudice. Alternatively, the parties may stipulate to a jury instruction regarding the four felony convictions, with the two robbery convictions and the two sanitized convictions and their dates included. In either event, the Court will instruct the jury that the felony convictions are to be used only for credibility determinations.

Plaintiff's felony convictions older than ten years will not be mentioned in Defendant's case or admitted in any way.

ORDER ON PENDING MOTIONS - 12

### F. Evidence Pertaining to the Turner v. Safley Analysis

Plaintiff continues to assert that evidence regarding the *Turner v. Safley* factors is not relevant to the trial. The appellate court held that "there was a genuine dispute of material fact as to whether Fox violated Williams' First Amendment right to petition and against retaliation when Fox rejected Williams' two grievances and warned of possible disciplinary action." Dkt. 129, at 2.

The Supreme Court identified four factors to consider when determining the reasonableness of a prison or jail rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). While Ninth Circuit precedent has indicated that—in the context of the fact patterns of the cases it has decided—prison officials in those cases did not meet the *Turner v. Safley* test in attempting to have their disrespectful-language policies upheld, the facts of this case are different. The Court will address this issue at the upcoming jury instructions oral argument and pretrial conference.

4. Dkt. 213

Plaintiff desires to have a subpoena issued for Defendant Fox. Counsel for Defendant has given no indication that Defendant does not intend to appear at trial. This

ORDER ON PENDING MOTIONS - 13

request would be a waste of public resources in advance of trial. If Fox does not appear, Plaintiff can renew his request.

Plaintiff states he will relinquish the request for witness Saxton. This request will be granted. Saxton is removed from the witness and subpoena list.

5. **Dkt. 218**

Plaintiff desires a jury instruction for general, compensatory, and punitive damages. The Court will rule on this request after the close of evidence. If the evidence shows that these instructions are supported by the law and the evidence presented, they will be given.

6. **Plaintiff's Clarification regarding an Erased Video of Defendant**

Plaintiff asserts that Defendant intentionally did not preserve a surveillance video showing him throwing one of the missing grievance up in the air. In Plaintiff's estimation, the Defendant allowed this particular video to be erased in the regular course of reusing the video and purposely did not intervene to save it, knowing that he would be sued and that it would be relevant to the suit.

Plaintiff plans to call witness Timothy Hillner to testify that he investigated Plaintiff's complaint against Defendant Fox, and that, during the course of that investigation, Hillner reviewed the video and saw Defendant toss the grievance into the air in rage. Therefore, the Court reasoned in a prior order, it does not seem necessary to show that the video was later overwritten in the normal course of re-use and maintenance of the videos unless Plaintiff has evidence that Defendant himself took some type of extraordinary action to ensure that the video was not saved if he had notice of a request to save it prior to it being overwritten in the normal course of business.

Plaintiff has responded that he will present evidence that Defendant knew he was going to be sued over the grievances. Plaintiff desires to show that Defendant had an ulterior motive in hiding or failing to preserve the video *and* in purposely omitting Plaintiff's video preservation language when Defendant transcribed Plaintiff's original handwritten grievance into a typewritten format. Because this topic may be relevant to Defendant's reasons for dealing with Plaintiff's grievances in the manner he did as well as to his credibility, the Court will permit Plaintiff to probe this area of questioning with Defendant and other witnesses.

## ORDER

**IT IS ORDERED:**

1. The Court will hold an in-person jury instruction oral argument and pretrial conference at the Boise Courthouse on **May 19, 2022, at 2:00 p.m**. A separate notice of hearing will issue and a separate transport issue for Plaintiff will be entered.

2. Plaintiff's Motion in Limine (Dkt. 208) is GRANTED in part and DENIED in part as outlined above.

3. Defendant's Motion in Limine (Dkt. 185) is GRANTED in part and DENIED in part as specified in the Court's Order at Docket 199, with the exceptions that Plaintiff may question Defendant and other witnesses about the erased video, and that the issues of the allegedly unconstitutional grievance policy and *Turner v. Safley* evidence remain open and will be clarified after the pretrial conference.

4. Plaintiff's Motion to Provisionally File the Accompanying Motions until Court

Orders IDOC to Provide Copy or E-File Service (Dkt. 201) is DENIED.

5. The parties are reminded that rulings on motions in limine "are not binding on the trial judge [who] may always change [their] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000).

6. Plaintiff's Motion for an Order That IDOC Provide a Copy of Recent Filings (Dkt. 214) is DENIED as MOOT.

7. Plaintiff's Request for Oral Arguments on Proposed Jury Instructions (Dkt. 226) is GRANTED to the extent the Court will hold a hearing on May 19, 2022.

8. The parties shall **not** respond to this Order with argument about jury instructions. The Court will issue a separate Order setting forth anticipated jury instructions, to which the parties will be required to respond in writing.

9. The Court anticipates having Plaintiff's witnesses served with a summons to appear at trial, on or after May 20, 2022. Plaintiff must be prepared to notify the Court at the pretrial conference on May 19 whether he still requests that all the witnesses attend trial, and on which days the witnesses should be subpoenaed for trial.

10. It would be helpful for Defendant to lodge electronic copies of the other grievances with the Court immediately to aid in the decisionmaking as to relevance of the objections and drafting of jury instructions.

DATED: May 4, 2022

David C. Nye
Chief U.S. District Court Judge