**JAN M. BENNETTS**
ADA COUNTY PROSECUTING ATTORNEY

**ERICA J. WHITE**
**ANDREW JENKINS**
Deputy Prosecuting Attorney
Civil Division
200 W. Front Street, Room 3191
Boise, ID  83702
Telephone:  (208) 287-7700
Facsimile: (208) 287-7719
Idaho State Bar Nos. 7475 & 10915
Email: civilpafiles@adaweb.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>      Plaintiff,<br><br>vs.<br><br>GUARD FOX,<br><br>      Defendant. | **Case No. 16-cv-00143-DCN**<br><br>**DEFENDANT FOX'S TRIAL BRIEF** |

Pursuant to the Court's Order on September 27, 2022 [Dkt. 267] and Dist. Idaho Loc. Civ. R. 16.3, Defendant Fox submits this Trial Brief.

## I.  INTRODUCTION

This case comes before the Court for jury trial following the Ninth Circuit's remand after it found that genuine issues of material fact precluded summary judgment in Defendant's favor on Plaintiff's claims that Defendant Fox violated his First Amendment right to petition the government for redress and his right to be free from retaliation for exercising his First Amendment Rights. Therefore, the remaining claims before the Court are Plaintiff's § 1983 claims under the First Amendment for Defendant Fox's alleged violation of his (1) right to petition the government

and (2) whether Defendant Fox threatened Plaintiff with physical harm for exercising his First Amendment Rights.

## II.     FACTUAL BACKGROUND

Plaintiff was arrested and booked into the Ada County jail on August 20, 2015 on charges for felony bank robbery. He was held as a pre-trial detainee until May 23, 2016. He was then transported to the Idaho Department of Corrections following his conviction for two felony convictions of robbery and illegal possession of weapon, with a persistent violator enhancement, with 37 years fixed.

Defendant Fox was employed as a Housing Deputy at the Ada County Jail. He worked in the maximum-security unit that Plaintiff was housed in during the pendency of his criminal case. On January 11, 2016, Plaintiff submitted a grievance form for processing. *See* Declaration of Landon Fox ¶ 6 [Dkt. 62-2]. Plaintiff alleges that he was grieving an unnamed deputy's refusal to process a grievance because it contained foul disrespectful language. Defendant Fox picked up the grievance, read it, then returned it to the Plaintiff. Defendant Fox informed Plaintiff that it did not grieve an issue and contained disrespectful vulgar language. *Id*. at ¶ 6, 7. Plaintiff refused to amend his grievance to conform to jail policy when given the opportunity and chose to push the unedited grievance form back towards Defendant Fox. *Id*. at ¶ 10. Instead of playing a game of pushing it back and forth, Deputy Fox left the form where Plaintiff had placed it. *Id*.

Shortly thereafter, Plaintiff submitted another grievance form for processing. *Id*. at ¶ 11. Plaintiff alleges that he was grieving Defendant Fox's refusal to process the prior grievance because it contained foul disrespectful language. Defendant Fox picked it up, read it, and placed it on the floor near the first grievance form as it did not grieve an issue and contained disrespectful vulgar language. *Id*. at ¶ 14.

DEFENDANT FOX'S TRIAL BRIEF – PAGE 2

After reading both grievance forms, Defendant Fox verbally informed Plaintiff that since he did not express a grievable issue in the forms they were not considered grievances and, therefore, would not be accepted as grievances. *See* Decl. of Landon Fox at ¶¶ 7-9, 13. He further informed Plaintiff that abuse of the grievance system was a violation of the inmate code of conduct. *Id*. He did not threaten Plaintiff with disciplinary action for attempting to file the grievances. *Id*.

Neither of the two grievance forms were kept by Plaintiff and are not available.

The following morning, Plaintiff submitted a third grievance form. Defendant Fox picked it up, read it, determined that it grieved an issue, and that it did not contain disrespectful vulgar language. Therefore, he entered it into the system and began the grievance process. In this form, Plaintiff stated that he was grieving Defendant Fox's refusal to process the grievance forms he had attempted to submit the evening before.

In the weeks prior to Plaintiff's interaction with Defendant Fox, Plaintiff had submitted several grievance forms complaining that he was not allowed to use disrespectful language in grievance forms and grieving that some of his grievances had been returned to him and not processed because of the disrespectful language.

### III.
### ANALYSIS

**A. DEFENDANT DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR REDRESS BECAUSE THE GRIEVANCE FORMS DID NOT CONTAIN ANYTHING BUT FRIVOLOUS, VEXATIOUS AND VULGAR LANGUAGE MEANT TO HARASS PRISON STAFF.**

The First Amendment to the United States Constitution includes the right to petition the government for redress of grievances. *Williams v. McKay*, 2020 WL 1105087, *3, 1:20-cv-00008-BLW (D. Idaho 2020). The right to petition applies to incarcerated individuals and includes the right to use a prison grievance process, if such a process exists. *Bradley v. Hall*, 64 F.3d 1276,

1279 (9th Cir. 1995) *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). The Ninth Circuit has determined that prisoners have a right to use disrespectful language in prison grievances. *See id.* at 1281-82; *Richey v, Dahne*, 733 F.App'x 881, 883-84 (9th Cir. April 25, 2018) (unpublished). However, this right is not unqualified. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) ("Simply because prison inmates retain certain constitutional rights does not mean that those rights are not subject to restrictions and limitations.").

In *Bradley*, the Ninth Circuit stated broadly that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance." *Bradley*, 64 F.3d at 1282. Similarly, in *Brodheim v. Cry*, the court held that a defendant's warning to an inmate about what the inmate writes in a grievance "cannot escape constitutional scrutiny by citing a legitimate penological interest." 584 F.3d 1262, 1273 (9th Cir. 2009). But in the decade or decades since those cases, courts—including the Ninth Circuit—have circumscribed these broad pronouncements in a number of important respects. *Williams*, 2020 WL 1105087 at *4.

First, frivolous grievances do not qualify as petitions for redress and, therefore, are not protected by the First Amendment. *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) ("Prisoners' grievances, unless frivolous, concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment.") (internal quotation marks omitted). Therefore, although this Court's review of the ultimate constitutionality of a prison policy under *Turner* must be content-neutral, *see Shaw*, 532 U.S. at 230, the Court still must consider the content of the grievance to determine, as a threshold matter, whether the grievance is frivolous or, in fact, constitutes a petition for redress. Because frivolous grievances are not protected petitions for redress, and because negligence is insufficient to state a constitutional claim under § 1983, *see Kingsley*, 135 S. Ct. at 2472, a prison official who

refuses to process a grievance that the official subjectively—even if mistakenly—believed was frivolous, then that defendant, having acted only negligently, has not violated the prisoner's right to petition the government for redress.

Second, prison "grievances that are nothing more than a string of insults do not constitute substantive grievances." *Williams v. Stewart*, Case No. 1:18-cv-00343-DCN, Dkt. 9 at 10 n.2 (D. Idaho April 15, 2019) (unpublished). Therefore, such grievances "also fail to qualify as protected petitions for redress under the First Amendment." *Id.*

Third, a grievance that is intended solely to harass prison staff, "rather than designed to lead to any practical result," is not protected by the First Amendment. *See Debarr v. Clark*, 648 F. App'x 706, 708 (9th Cir. April 18, 2016) (unpublished). Such unprotected writings include grievances that are "frivolous, vexatious[,] or duplicative." *Id.*

Fourth, although the Ninth Circuit Court of Appeals has not yet found a legitimate penological interest that supports policies prohibiting merely *disrespectful*, as opposed to harassing or threatening, language in prison grievances, *see Brodheim*, 584 F.3d at 1273; *Richey*, 733 F. App'x at 884, that court has recognized that a state may have "non-content-based legitimate penological reason[s]" for "constrain[ing] the expression of prisoners" in the context of prison grievances, such as "avoiding hostilities or potential violence." *Richey*, 733 F. App'x at 883.

Fifth, the Ninth Circuit has held that the First Amendment's protection of disrespectful language in prison "relates *only* to the narrow category of cases dealing with prison grievances." *Id.* at 884. (emphasis added). Therefore, if an inmate uses disrespectful language in some other context—such as in a frivolous, vexatious, or duplicative writing that does not qualify as a right to petition for redress, in a purported "grievance" that is nothing more than a string of insults, or in a grievance intended solely to harass—then the government may indeed have "legitimate

DEFENDANT FOX'S TRIAL BRIEF – PAGE 5

penological concerns related to the security of guards and the desirability of maintaining harmonious relationships between guards and prisoners to the extent possible." *Id.*

Sixth, although a prison grievance's progression through the administrative process cannot be stopped entirely based solely on disrespectful language, the right to petition is not violated if a prison official merely *returns* the grievance to the inmate or asks the inmate to rewrite it in a more appropriate manner. This is because prison officials have a legitimate penological interest in "maintaining good relations between prisoners and guards." *Richey*, 733 F. App'x at 883; *see also id.* ("[T]he violation here occurred when Dahne *refused to allow the grievance to proceed* through the administrative process....") (emphasis added). That is, an official action that simply returns the grievance to an inmate does not violate the right to petition, but an official action that stops the grievance process—such as an outright refusal to accept a grievance—does. *Williams*, 2020 WL 1105087 *5.

In the present case, the Plaintiff's grievance forms did not seek redress from the government because the forms did not grieve any issues or decisions. Nor were they designed to lead to any practical result. Rather, they contained a string of insults meant merely to harass prison staff and set Defendant Fox up for a preconceived lawsuit. Furthermore, they were duplicative of issues previously grieved in violation of the jail's grievance policy.

Specifically, on January 11, 2016, Plaintiff placed a grievance form outside his cell to be picked up. Plaintiff alleges that he was grieving that an unnamed deputy refused to take his grievance the prior day. Deputy Fox picked up the grievance, read it, determined that it did not grieve an issue but rather contained insulting disrespectful language. Deputy Fox returned the form to the Plaintiff. Plaintiff pushed the form back towards Deputy Fox. Instead of playing a game of pushing it back and forth, Deputy Fox left the form where Plaintiff had placed it.

DEFENDANT FOX'S TRIAL BRIEF – PAGE 6

Shortly thereafter, Plaintiff placed a new form outside his cell to be picked up. Plaintiff alleges that he grieved Deputy Fox's refusal to pick up the grievance form minutes earlier. Deputy Fox read the grievance and again determined that it did not grieve an issue but rather contained insulting, disrespectful language. Deputy Fox did not attempt to give it back to Plaintiff because of Plaintiff's refusal to accept return of the prior grievance form. Instead, he placed it on the floor near the Plaintiff's first grievance form.

Deputy Fox did not violate Plaintiff's right to petition for several reasons. First, the grievance forms were frivolous. Plaintiff was not seeking redress. Rather, he had conceived a plan to attempt to set Ada County and/or its employees up for a potential First Amendment violation. He had written to a friend informing her that he was purposely calling deputies names and using disrespectful language in grievance forms. *See* Declaration of Paul Stoltenberg. He said he was doing this so the grievance forms would be rejected, thus providing him with a basis to file a lawsuit for a violation of his first amendment right to petition. *Id*.

Second, the Plaintiff's grievance forms were nothing more than a string of insults and they were intended to harass prison staff. Third, if the grievance forms included his grievance that an unnamed deputy and Deputy Fox refused to process his grievance forms because they contained disrespectful language, he had already lodged such grievances and had received responses. Therefore, they were duplicative writings. As such, the protection that Plaintiff seeks for his disrespectful language is not available because such protection only applies to grievances that are not frivolous, not vexatious, and not duplicative.

Finally, even if the jury finds that the grievance forms contained an appropriate petition for redress along with the disrespectful language, a violation still did not occur because the grievance process was not stopped by Deputy Fox. Rather, Deputy Fox returned the first grievance form to

Plaintiff. The Plaintiff was not prevented from re-writing the grievance without the disrespectful language and re-submitting it. As to the second form, Deputy Fox did not return it to the Plaintiff based on Plaintiff's refusal to accept the return of the prior grievance 15 minutes earlier, but he did set it on the floor near where the Plaintiff left the first one. The grievance process was not stopped by Deputy Fox as Plaintiff submitted another grievance the following morning grieving Deputy Fox's refusal to process the grievance from the night before. This is allegedly what the Plaintiff grieved in the form that Deputy Fox refused to process but without the disrespectful language. Therefore, the Plaintiff's grievance was processed and his right to petition was not violated.

**B. THE DEFENDANT DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT TO BE FREE FROM RETALIATION BECAUSE THE PLAINTIFF DID NOT ENGAGE IN A PROTECTED ACTIVITY AND EVEN IF HE HAD DEFENDANT FOX DID NOT TAKE ADVERSE ACTION AGAINST HIM BECAUSE OF IT.**

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: "(1) … that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, … that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). When analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). Retaliatory motivation is not established simply by showing an adverse action by the defendant after protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260. Even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

DEFENDANT FOX'S TRIAL BRIEF – PAGE 9

Turning to the present case, the Court has narrowed this issue to Plaintiff alleging that Defendant Fox retaliated against him by making a threat of bodily harm. The Plaintiff cannot satisfy the elements of a First Amendment retaliation claim because he was not engaged in a constitutionally protected activity because the grievance forms at issue were not petitions for redress. Instead, they were duplicative writings that contained insulting language submitted for the sole purpose of harassing prison staff and Defendant Fox's refusal to process the forms did not stop the grievance process. The Plaintiff was allowed to resubmit the grievance forms without the disrespectful language or even with the disrespectful language if the grievance contained a legitimate issue.

Furthermore, Defendant Fox did not take an adverse action against the Plaintiff. Defendant Fox did not make any sort of statement indicating he was going to harm the Plaintiff. Plaintiff is not going to be able to show that there was any adverse action. Even if Plaintiff does happen to show there was some sort of adverse action, Plaintiff will not be able to show the substantial or motivating factor behind that action was any protected conduct.

Finally, even if it could be found that Plaintiff engaged in a protected activity and Defendant Fox took an adverse action against Plaintiff because of it, the jail had a legitimate interest in maintaining institutional order, safety, security in its prisons, and not unnecessarily expending resources. The jail met this interest by not allowing inmates to use disrespectful, vulgar language in inmate grievance forms and instead allowed inmates to re-write their grievances. Additionally, the jail met these goals by not processing all grievances when deputies determined the grievances did not conform to the grievance policy found in the inmate handbook and Standard Operating Procedure 4.5.

### C.  DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id*. at 231 (citation omitted).

In evaluating a claim of qualified immunity, the burden is on Plaintiff to show two elements: (1) a violation of a constitutional right, and (2) that the constitutional right was "clearly established" at the time of the alleged violation. *Id.* at 232. A court may begin its analysis at either prong of the inquiry. *Id.* at 236. Under the first element, if no constitutional right would have been violated, then the court should find that qualified immunity is appropriate. *Id*. Under the second element, Plaintiff must show that the law put Defendant on notice that his conduct would be clearly unlawful, or Defendant Fox is entitled to qualified immunity. *Id.* Importantly, Defendant Fox could have "reasonably but mistakenly believed that his . . . conduct did not violate a clearly established constitutional right" and still be entitled to qualified immunity.  *Id*.

"Clearly established law" should not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. *White*, 137 S. Ct. at 551. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014).

1.  **Defendant Fox is entitled to qualified immunity on Plaintiff's right to petition the government for redress.**

Plaintiff cannot satisfy either prong of the qualified immunity test as to his right to petition for redress claim. Specifically, as set out above, Defendant Fox did not violate Plaintiff's right to petition by returning the grievance forms to Plaintiff. However, even if Plaintiff is able to establish a constitutional violation, Defendant Fox is still entitled to qualified immunity because the case law was not developed in such a concrete and factually defined context to make it obvious to all reasonable jail deputies in Defendant Fox's place that what Defendant Fox did violated federal law. *White*, 137 S. Ct. at 551.

In considering whether an act constitutes a violation of a clearly established constitutional right, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The specific question to determine in this case is whether a deputy violates clearly established law regarding the Petition Right when he returns a grievance form submitted by an inmate after he has read and reviewed it and determined that it was a frivolous grievance. The answer to the inquiry is – no.

Plaintiff has the burden of demonstrating that the right allegedly violated was so clearly established at the time of the incident that a reasonable official in Defendant Fox's position should have known that what he was doing violates that right. *Pearson*, 555 U.S. 223 (2009). Plaintiff cites to three cases for the proposition that Defendant Fox violated his right to petition for redress: *Bradley v. Hall*, 64 F. 3d 1276 (9th Cir. 1995); *Brodheim v. Cry*, 584 F. 3d 1262; and *Richey v.*

*Dahne*, 733 Fed. Appx. 881 (9th Cir. 2018) (unpubl.)[1]. However, none of these cases articulates a clearly established right that returning a grievance form to an inmate, after reading it and considering it, is a violation of the inmate's right to petition for redress. These cases all deal with retaliation claims, which are separate claims from the underlying constitutional claim. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (retaliatory actions "violate the Constitution quite apart from any underlying misconduct they are designed to shield."). Therefore, these cases cannot and do not define the contours of the law regarding the right to petition.

Additionally, those cases Plaintiff relies on do not touch upon Defendant's determination that the grievances in question did not grieve an actual issue. The grievances in the cases cited above were rejected *only* because they were using disrespectful language. Defendant Fox did not reject the grievance purely on this basis. It was also rejected because the grievances in question did not grieve actual issues. The law cannot be clearly established based upon those cases when they do not discuss the factual pattern in play.

Ultimately, there is no case law from the Supreme Court or the Ninth Circuit establishing the law in such a concrete or particular matter so as to put Defendant Fox on notice that his actions violated Plaintiff's right to petition for redress. In fact, review of the relevant case law leads to the opposite conclusion. Thus, Defendant Fox is entitled to qualified immunity on this claim.

    i.    *Defendant Fox is entitled to qualified immunity because he was reasonably following the jail's grievance policy.*

Determining if a defendant is entitled to qualified immunity when following policy requires the Court to look at the objective legal reasonableness of the challenged action in light of the clearly established law at the time. *Chew v. Gates*, 27 F.3d 1432, 1447-48 (9th Cir. 1994). If the

---

[1] *Dahne*, as an unpublished opinion, cannot be said to place any legal question beyond debate that a legal right has been clearly articulated. Further, it was issued in 2018. A case issued in 2018 cannot clearly establish what the law was in 2016.

policy is not fundamentally violative of the basic principles of the constitution, then the one following policy is entitled to qualified immunity. *Brown v. Mason*, 288 Fed.Appx. 391, 392-93 (9th Cir. 2008) (unpublished) (citing *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 2003)). "[W]hen correctional officials follow policy in performing their work, courts have recognized that qualified immunity applies." *Luna v. Thurien*, 129 Fed.Appx. 381, 384 (9th Cir. 2005) [FN4] (internal citations omitted) (J. Callahan dissenting) (unpublished); *Gawlik v. Arizona*, 2013 WL 2422701 at *4 (D. Ariz. 2013) (unpublished) (citing to *Yellow Horse v. Pennington County*, 225 F.3d 923, 927-28 (9th Cir. 2000)). Importantly, that policy must have not been found to be unconstitutional at the time of the alleged violative action. *Smyl, Inc. v. Gerstein*, 364 F.Supp. 1302, 1310 (S.D. Florida 1973) (citing to *Pierson v. Ray*, 386 U.S. 547 (1967) (the *Pierson* court indicating a police officer would be entitled to qualified immunity for enforcing a law believed to be valid but later deemed unconstitutional)). In other words, a jail deputy is entitled to qualified immunity when he is relying on a policy which has not been determined to be unconstitutional and is not on its face fundamentally unconstitutional.

Defendant Fox had a policy to follow while working at the Ada County Jail. That policy outlined what grievances were acceptable for processing. The policy stated the grievances must grieve an action or decision by jail staff, that grievances containing vulgar references or otherwise insolent language would not be answered, and that grievances that repeatedly grieved the same issue constituted an abuse of the grievance process and could result in disciplinary action. If a grievance did not conform to the policy, it did not *require* a deputy to accept the grievance and process it.

At the time Defendant Fox picked up Plaintiff's grievance, the policy's constitutionality had never been challenged, invalidated, or been deemed by any court to be unconstitutional. Thus,

Defendant Fox was entitled to presume that the policy had been reviewed for potential liability by those who created it and their legal counsel. *See Grossman v. Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Defendant Fox was entitled to rely on the policy and not required to choose between being charged with dereliction of duty if he processed the frivolous grievances or being faced with damages if he didn't. Therefore, Defendant Fox acted as any reasonable jail deputy would in that situation. He was charged with complying with a policy, and he did so. Defendant Fox is therefore entitled to qualified immunity on this basis.

ii.    *The increased value on the Petition Clause in grievances created by the Ninth Circuit is incongruent with the U.S. Supreme Court's interpretation of the Petition Clause.*

The Supreme Court has held that the Petition Right is not absolute and does not protect individuals who make baseless or recklessly false accusations under the pretense of petitioning the government. *McDonald v. Smith*, 105 S. Ct. 2787, 2790–91 (U.S. 1985). In *McDonald*, the Supreme Court concluded that it was not the intent of the Framers to include an unqualified right to express damaging falsehoods in exercise to the Petition Right. *Id.* at 2791. The Court reasoned that since the Petition Right is inseparable from the other First Amendment freedoms, "there is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment protections." *Id.*

This interpretation of the contours and limits of the Petition Right by the Supreme Court is at odds with the expansive view of the Ninth Circuit in the context of prisoner grievances. In the Ninth Circuit, the Petition Right has been elevated to protect against the chilling effect caused by requiring an inmate from having to guess if his hostile, sexual, abusive, and threatening language has crossed the "hazy line" "between honest, unabashed airing of grievances and hostile and abusive language." *Bradley v. Hall*, 64 F.3d 1276, 1281 (9th Cir. 1995). In practical application of this principle, an inmate could be punished for using "hostile, sexual, abusive, or threatening

DEFENDANT FOX'S TRIAL BRIEF – PAGE 15

language" in verbal exchanges with jail staff, or in a note written directly to jail staff. But should the exact same language appear in a document entitled "grievance," it is entitled to protective status. This result seemingly conflicts with the Supreme Court's insistence in *McDonald* that the Petition Right does not enjoy special First Amendment status. This apparent contradiction places jail guards, uneducated in the nuances of the constitutional law, in the difficult position of applying a constitutional analysis to any hostile, sexual, abusive, or threatening (but not criminally threatening) communication from an inmate to determine whether it is protected speech or not, with the threat of a civil rights lawsuit hanging over their heads should they happen to make a mistake.

This elevated right to petition also creates confusion for the men and women who daily operate jails and interact with inmates on how to interact and instill the legitimate penological goal of maintaining institutional order and rehabilitating inmates by requiring respectful interactions with peers and those in authority. If the Supreme Court and the Ninth Circuit are at odds in their interpretation of how the Petition Clause functions, then it is unreasonable to expect a jail guard making decisions on the front line liable in a civil rights action for mistakenly warning an inmate that his conduct may lead to adverse consequences. *Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy"); *Rhodes v. Robinson*, 408 F.3d 559, 570 (9th Cir. 2005)("Given the basic demand that state actors conform their conduct to the law, there is something particularly unfair about holding officials liable for conduct that they did not (and could not) know was unlawful at the time they decided to act.").

In sum, the law regarding retaliation in the context of a prison grievance is not definitively clear so as to put a reasonable person in Defendant Fox's situation on notice that warning an inmate

that use of derogatory and disrespectful language toward jail staff in a statement that he believes does not contain a petition for redress is a constitutional violation.

## D.  OBJECTIONS UNDER DISTRICT LOCAL RULE CIV 16.3

### a.  Use of a deposition under F.R.C.P 32(a)

As of today's date, no depositions have been taken in this case and no party has indicated that they intend to use a deposition pursuant to F.R.C.P. 32(a).

### b.  Objections to admissibility of materials identified as exhibits by Plaintiff.

Defendant makes these objections based upon the previous exhibit list that was provided. Defendant objects to Plaintiff's proposed exhibits 1000-1004, 1019. These include signed declarations and Defendant's responses to Plaintiff's discovery requests. These documents are inadmissible hearsay.

Defendant objects to exhibits 1005, 1007, 1018, 1020 as Defendant is unclear what the proposed exhibits will consist of.

Defendant object to exhibit 1015 as Plaintiff has not identified the author of that document as a witness. Thus, it will be inadmissible hearsay and there is no foundation to admit it.

Defendant has asserted additional objections in his Motion in Limine and hereby incorporates any and all objections to exhibits identified in his Motion in Limine and supporting documents herein.

**DATED** this 11th day of October, 2022.

**JAN M. BENNETTS**
Ada County Prosecuting Attorney


By:     /s/ Erica J. White
        Erica J. White
        Deputy Prosecuting Attorney

DEFENDANT FOX'S TRIAL BRIEF – PAGE 17

**DATED** this 11th day of October, 2022.

                                  **JAN M. BENNETTS**
                                  Ada County Prosecuting Attorney

                                  By:     /s/ Andrew Jenkins
                                          Andrew Jenkins
                                          Deputy Prosecuting Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of October, 2022, I filed the foregoing DEFENDANT FOX'S TRIAL BRIEF electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

N/A

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated as follows:

Kent Williams                                              _____ Hand Delivery
119473                                                        __x__ U.S. Mail
IMSI                                                           _____ Electronic Mail
PO Box 51                                                  _____ Facsimile
Boise, ID  83707


                                                  /s/  Chyvonne Tiedemann
                                                  Legal Assistant